ACCEPTED
01-15-00551-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/6/2015 6:49:27 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00551-CV

In the Court of Appeals for the
First District of Texas
Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/6/2015 6:49:27 PM

CHRISTOPHER A. PRINE
Clerk

*In re Camp la Junta 1928, LP, Blake Smith, Camp la Junta, Inc., and
CLJ Management Systems, L.L.C.*
***Relators***

_____

Original Proceeding from the 333rd District Court of Harris County, Texas
Cause No. 2012-31192
Honorable Joseph "Tad" Halbach, Presiding

_____

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

_____

**Rusty Hardin**
  State Bar No. 08972800
**Andy Drumheller**
  State Bar No. 00793642
**Bob Wynne**
  State Bar No. 24060861

**Rusty Hardin & Associates, LLP**
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone:   713–652–9000
Facsimile:    713–652–9800
Email: rhardin@rustyhardin.com
Email: adrumheller@rustyhardin.com
Email: bwynne@rustyhardin.com
*Attorneys for Plaintiffs/Real Parties
In Interest Johnny Doe, Jane Doe, and
John Doe*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................ii

TABLE OF AUTHORITIES .................................................................................iii

    Joint Statement of The Case and Statement of Facts ....................................1

    Argument ........................................................................................................5

        The Camp Is Not Entitled to The Issuance of a Writ of Mandamus..........5

    A.    The District Court Did Not Abuse Its Discretion ..................................6

    B.    The Camp Will Not Suffer Irreparable Harm Absent Mandamus ........16

    C.    The Camp Lacks Standing to Bring This Mandamus Proceeding........17

    D.    Counsel's Statements at the Oral Hearing Are Admissible Evidence...18

    Conclusion ...................................................................................................19

CERTIFICATE OF COMPLIANCE ....................................................................20

CERTIFICATE OF SERVICE .............................................................................20

APPENDIX ...........................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Banda v. Garcia*,
955 S.W.2d 270 (Tex. 1997) ...............................................................................18

*Braden v. Downey,*
811 S.W.2d 922 (Tex. 1991) ...............................................................................16

*Brady v. Fourteenth Court of Appeals*,
795 S.W.2d 712 (Tex. 1990) .................................................................................6

*Holloway v. Fifth Court of Appeals*,
767 S.W.2d 680 (Tex. 1989) .................................................................................6

*Hunt v. Bass*,
664 S.W.2d 323 (Tex. 1984) ...............................................................................17

*In re Angelini*,
186 S.W.3d 558 (Tex. 2006) .................................................................................6

*In re Carrington*,
438 S.W.3d 867 (Tex. App.—San Antonio 2014) .................................................6

*In re Ford Motor Co.*,
988 S.W.2d 714 (Tex. 1998) .................................................................................6

*In re Houston Chronicle Pub. Co.*,
64 S.W.3d 103 (Tex. App.—Hous. [14th Dist.] 2001) .......................................17

*In re KC Greenhouse Patio Apartments, L.P.*,
445 S.W.3d 168 (Tex. App.—Hous. [1st Dist.] 2012)...........................................7

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ...............................................................................16

*In re Sweed*,
   157 S.W.3d 929 (Tex. App.—El Paso 2005) .......................................................7

*Johnson v. Fourth Court of Appeals*,
   700 S.W.2d 916 (Tex. 1985) ..........................................................................7, 8

*Keith v. Keith*,
   221 S.W.3d 156 (Tex. App.—Hous. [1st Dist.] 2006)........................................18

*Lutheran Social Services, Inc. v. Meyers*,
   460 S.W.2d 887 (Tex. 1970) ...............................................................................8

*Pat Walker & Company, Inc. v. Johnson*,
   623 S.W.2d 306 (Tex. 1981) ...............................................................................8

*Sneed v. Webre*,
   ___ S.W.3d ___, 2015 WL 3451653 (Tex. May 29, 2015) .................................17

*Terrazas v. Ramirez*,
   829 S.W.2d 712 (Tex. 1991) .............................................................................17

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) ................................................................. 6, 8, 16

*Wortham v. Walker*,
   128 S.W.2d 1138 (Tex. 1939) ..............................................................................6

## Statutes

TEX. R. CIV. PROC. §§ 173.1–173.7 ........................................................................8

In July 2009, Plaintiff/Real Party in Interest Johnny Doe (then an 11-year-old boy, now a 17-year-old young man) was sexually assaulted by Senior Camp Counselor Matthew Bovee on multiple occasions through acts of anal penetration and genital grouping. In May 2011, Bovee pleaded guilty to a felony offense for his criminal actions.

In May 2012, Johnny Doe by and through his parents, Jane and John Doe (collectively, the "Doe Family") filed this lawsuit against Defendants/Relators Camp La Junta 1928, L.P., Blake Smith, Camp La Junta, Inc., and CLJ Management Systems, L.L.C. (collectively, the "Camp") for various causes of action. The Camp's unlawful acts and omissions before, during, and after the sexual abuse are detailed more thoroughly in the Doe Family's Second Amended Petition. *See* Appendix to Petition Writ of Mandamus, Tab B. As a brief factual summary, the Camp committed numerous tortious acts (independently and vicariously) (a) through their own acts of defamation, misrepresentation, and cover-up; (b) arising from their employment, supervision, and retention of Bovee; (c) through their investigation of and failure to report sexual abuse; and (d) through various other acts and omissions at issue in this civil action. *Id*. at ¶¶ 11–87.

Of particular importance, the Camp made numerous public statements that Johnny Doe was lying about the sexual abuse, had emotional problems, was a

1

problem child, and belonged to a litigious family. *Id.* at 9–11. In addition, the Camp repeatedly made public statements that Johnny Doe was the only witness and the only person who complained about Bovee, while strongly emphasizing denials made by Bovee and openly suggesting that the sexual abuse could not have happened. *Id.* In reality, the Camp knew that these statements were false at the time the statements were made, yet made these intentionally-false statements to parents, counselors, and law enforcement in order to cover up the sexual abuse. *Id.*

To this day, the Camp has not publicly recanted its false, defamatory statements about Johnny Doe, has not publicly admitted its wrongdoings, and has not publicly admitted that Johnny Doe was sexually molested. In fact, the Camp continues to claim that the sexual abuse did not occur, continues to deny any wrongdoing, and continues to blame Johnny Doe's parents and others as the cause of his injuries.

On the eve of a prior trial setting in September 2014, the Camp filed an initial Motion for Appointment of Guardian Ad Litem. *See* Motion for Appointment of Guardian Ad Litem, Appendix to Response, Tab A. That motion was orally denied by the District Court at the conclusion of a telephonic hearing.

In May 2015 (again on the eve of trial), the Camp filed a First Amended Motion for Appointment of a Guardian Ad Litem, seeking the same relief on the same grounds as it had done the year before. During the oral hearing, counsel for

the Camp acknowledged that the Camp was seeking the appointment of a guardian ad litem solely because the Camp contended that a non-monetary settlement demand made by Johnny Doe—referred to as a "poison pill"—would ensure that this civil action would go to trial. Hearing Transcript, Appendix to Petition for Writ of Mandamus, Tab E at 4, 13, 20–25.

The so-called "poison pill" in this instance is a demand by Johnny Doe that the Camp publicly recants its prior misrepresentations about Johnny Doe, publicly admits each of its wrongful acts, and publicly acknowledges that Johnny Doe was sexually molested. Contrary to the Camp's erroneous position, Johnny Doe himself (not his parents) demanded this non-monetary relief because it is the only way to cure the Camp's previous public misrepresentations regarding his character, his honesty, and his sexual abuse. Hearing Transcript at 25.

At the conclusion of the oral hearing, the District Court denied the Camp's amended motion, having concluded that there was no adverse interest between Johnny Doe and his parents. Hearing Transcript at 26. The Camp has now filed a Petition for Writ of Mandamus with the Appellate Court, requesting that the Appellate Court appoint a guardian ad litem to advise the District Court on whether Johnny Doe's own, personal, non-monetary settlement demands are within his own best interests. *See* Petition for Writ of Mandamus ("Mandamus Brief") at 2, 29; Hearing Transcript, at 13, 20–25.

Looking aside the fact that both a guardian ad litem and the District Court are legally powerless to force Johnny Doe to forego his own settlement demands—as expressly recognized by the District Court and the Camp—there is simply no legal basis or factual evidence to warrant the appointment of a guardian ad litem in this matter. *See* Hearing Transcript at 9, 23. Through its motion and in this mandamus proceeding, the Camp asserts that the "poison pill" is being advanced by John and Jane Doe against Johnny Doe's wishes; hence an adverse interest has arisen between Johnny Doe and his parents. *See* Petition for Writ of Mandamus ("Mandamus Brief") at 29; Hearing Transcript at 13, 20–25. The Camp's contention is entirely wrong. Because Johnny Doe is the individual driving the non-monetary relief at issue, there is no adverse interest between him and his parents. *Id.*

Even more so, the Camp lacks legal standing to bring this mandamus proceeding on behalf of Johnny Doe as (a) it does not act in a representative capacity for Johnny Doe, and (b) it has not suffered any harm capable of being remedied. *See* Petition for Writ of Mandamus at 28 ("The irreparable harm to be suffered in this case would be visited on Johnny Doe.") And, considering that the Camp (1) covered up the sexual abuse before, during, and after the actual period of molestation,[1] (2) publicly defamed Johnny Doe to multiple people on multiple occasions,[2] (3) publicly

---

[1] Second Amended Petition at ¶¶ 23–41.

[2] *Id.* at ¶¶ 38–46.

supported Bovee in multiple written letters,[3] (4) has actually countersued John and Jane Doe,[4] (5) has publicly blamed John and Jane Doe as the cause of Johnny Doe's damages,[5] and (6) has publicly disclosed Johnny Doe's name on multiple occasions previously,[6] it appears that the Camp's mandamus proceeding is not a good-faith effort to watch out for Johnny Doe's best interests, but simply a pretext designed to delay the trial of this matter further. After all, if the Camp truly cared about Johnny Doe's best interests, the Camp should have welcomed Johnny Doe's own thoughts and words on the subject, instead of diligently attempting to exclude the seventeen-year-old victim's own viewpoints.[7]

## ARGUMENT

### THE CAMP IS NOT ENTITLED TO THE ISSUANCE OF A WRIT OF MANDAMUS

A writ of mandamus is an extraordinary remedy that should be reserved for situations involving "manifest and urgent necessity." *Holloway v. Fifth Court of*

---

[3]     *Id*. at ¶ 38.

[4]     Joint Motion to Transfer Venue, and Subject Thereto Original Answers, Special Exceptions, and Counterclaims to Plaintiffs' Second Amended Petition With Requests for Disclosures at 15–19, Appendix to Response, Tab B.

[5]     *See, e.g.*, Motion to Designate Responsible Third Party, Appendix to Response, Tab C; Motion to Strike and Objection to Motion to Designate Responsible Third Party, Appendix to Response, Tab D.

[6]     Deposition of Megan Mooney, Ph.D., 83:9–83:18 (Sept. 8, 2014), Appendix to Response, Tab E.

[7]     *See* Post-Hearing Submission of Evidence (Exhibit B is filed under seal), Appendix to Response, Tab F; Objection to and Motion to Strike Post-Hearing Submission of Evidence, Appendix to Response, Tab G.

*Appeals*, 767 S.W.2d 680, 684 (Tex. 1989). To be entitled to a writ of mandamus, the realtor bears the burden of demonstrating that the trial court clearly abused its discretion in committing error and that the realtor has no adequate remedy at law to redress the error. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992); *In re Carrington*, 438 S.W.3d 867, 868–69 (Tex. App.—San Antonio 2014).

"Mandamus is a writ which issues to require the execution of a matter whose merit is beyond dispute, and may not be employed as scales in which to balance the weight of evidence or to bridge the gap between broken or disconnected facts." *Wortham v. Walker*, 128 S.W.2d 1138, 1151 (Tex. 1939); *see also In re Ford Motor Co.*, 988 S.W.2d 714, 722 (Tex. 1998) ("There is also a factual dispute about who is responsible for the car's changed condition that precludes us from granting mandamus relief.") Accordingly, "[i]t is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding." *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006), *quoting Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex. 1990).

### A. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

Here, the Camp argues that the District Court abused its discretion when it concluded that there was no adverse interest between Johnny Doe and his parents, such that a guardian ad litem was not required to be appointed under Texas Rule of Civil Procedure 173.2(a)(1). An appellate court reviews the decision to appoint a

guardian ad litem under an abuse of discretion standard.[8]  *See In re KC Greenhouse Patio Apartments, L.P.*, 445 S.W.3d 168, 171 (Tex. App.—Hous. [1st Dist.] 2012).

A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law.  *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).  Accordingly, an "appellate court rarely interferes with a trial court's exercise of discretion."  *In re Sweed*, 157 S.W.3d 929, 930 (Tex. App.—El Paso 2005).  And, a "relator who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden."  *Johnson*, 700 S.W.2d at 917, *citing to Lutheran Social Services, Inc. v. Meyers*, 460 S.W.2d 887, 889 (Tex. 1970).

For purposes of mandamus, the relator must establish that the facts and law permit the trial court to make but one decision.  *Johnson*, 700 S.W.2d at 917.  This determination is essential because mandamus will not issue to control the action of

---

[8]  In their mandamus brief, the Camp argues that, as long as it introduced a scintilla of evidence in support of an adverse interest between Johnny Doe and his parents, the District Court had no discretion and was required as a matter of law to appoint a guardian ad litem.  The Camp appears to have invented this novel scintilla-of-evidence standard for purposes of this mandamus proceeding because there is no jurisprudence or scholarly analysis to support the imposition of such a standard in the Rule 173 context.  In fact, it strikes the Doe Family as constitutionally problematic for the State to deprive parents of their parental duties merely because a litigation adversary has attempted to offer a scintilla of evidence to support an adverse interest between parent and child.  *See In re KC Greenhouse Patio Apartments, L.P.*, 445 S.W.3d 168, 174 (Tex. App.—Hous. [1st Dist.] 2012).  In addition, it seems particularly unwise to deprive trial courts of the discretion to weigh and to consider evidence during pre-trial proceedings.  Lastly, this Appellate Court appears to have already determined that district courts are afforded considerable discretion in determining whether to appoint a guardian ad litem or not.  *Id*. at 171 ("We review an appointment of a guardian ad litem under an abuse of discretion standard.")

a lower court in a matter involving discretion. *Pat Walker & Company, Inc. v. Johnson,* 623 S.W.2d 306, 308 (Tex. 1981).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker,* 827 S.W.2d at 839. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

Rule 173 of the Texas Rules of Civil Procedure governs the procedure and grounds for the appointment of a guardian ad litem. TEX. R. CIV. PROC. §§ 173.1–173.7. In sum, a trial court may appoint a guardian ad litem "only if the next friend or guardian appears to the court to have an interest adverse to the party." *Id.* at § 173.2.

Once appointed, a guardian ad litem "acts as an officer and advisor to the court." *Id.* at § 173.4. In exercising these duties, a guardian ad litem has two limited functions: (1) a guardian ad litem may participate at mediation, and (2) a guardian ad litem must participate in any settlement hearing to determine whether the settlement is in the party's best interest. *Id.* Aside from that, a guardian ad litem "must not participate in discovery, trial, or any other part of the litigation." *Id.*

In this mandamus proceeding, there are no valid bases on which to appoint a guardian ad litem and, equally important, there are no existing duties or functions for the guardian ad litem to perform (even if appointed). The Camp contends that there are two separate factual grounds on which Johnny Doe and his parents have an adverse interest which required the appointment of a guardian ad litem, namely (1) Johnny Doe's parents have "encourage[ed] and facilitated media attention for the case," and (2) Johnny Doe's parents have "declin[ed] settlement offers in pursuit of non-monetary goals." Mandamus Brief at 29. Neither of these two grounds constitutes an adverse interest between Johnny Doe and his parents.

First, Johnny Doe's parents have not declined settlement offers in pursuit of non-monetary goals. Instead, Johnny Doe himself has declined settlement offers in pursuit of a signed, written, public letter of allocution from the Camp because this incredibly-meaningful, non-monetary goal ensures that the Camp is required to cure the damages caused by its own prior misrepresentations regarding Johnny Doe's character, honesty, and sexual abuse. Hearing Transcript at 25; Exhibit B to Post-Hearing Submission of Evidence. Nothing aside from the Camp's recantation of its prior misrepresentations and full admission of wrongdoing can adequately compensate for the Camp's wrongful acts. Accordingly, this purported conflict is not an actual conflict between Johnny Doe and his parents, but instead a joint effort

9

between Johnny Doe, his parents, and his attorneys to obtain meaningful, desired relief on Johnny Doe's behalf.

More so, Johnny Doe's own treating psychologist has testified that his parents have not pushed or coerced Johnny Doe into taking any litigation action. The treating psychologist's testimony is highly relevant and critically important to this mandamus proceeding because her testimony flatly and overwhelmingly rebuts the Camp's primary contention that Johnny Doe's parents are essentially forcing him into an unwanted trial.

Megan Mooney, Ph.D. is a clinical psychologist employed as the Staff Psychologist Supervisor of the Trauma Clinic at The DePelchin Children's Center. Mooney Depo at 4:18–5:16. Dr. Mooney has been actively treating Johnny Doe as a consequence of his sexual abuse since July 2012. *Id.* at 9:5–9:9.

In September 2014, the Camp deposed Dr. Mooney. During her deposition, Dr. Mooney offered the following definitive testimony:

> Q. Now, in your experience with the [Doe] family, have you felt, either in whole or in part, that—that [Johnny Doe's] mom and dad have pushed him into a lawsuit and have pushed him into doing something that he doesn't want to do or that he's not comfortable with?
>
> A. No.
>
> Q. Okay. Well, elaborate a little bit further on that. Because you've got some questions that—that may or may not have implied that. So, I want to clarify it for the judge and jury so that—that there's no question marks at trial.

10

A. From the get—beginning, [Johnny Doe's] been very clear with me that one of his main reasons for speaking out about his abuse is to protect other children; and so, his view of the legal things tied to that are in his hopes to protect other children from being abused or [h]armed.

Q. Okay.

A. So, he very much, you know, is—is all for anything that is going to make that happen.

Mooney Depo at 78:14–79:8. Dr. Mooney's testimony demonstrates that Johnny Doe's parents have not pushed him into anything, and that Johnny Doe is personally committed to going to trial if that is necessary to cure the Camp's prior public misrepresentations. The Camp's arguments to the contrary should be rejected as merely a self-serving attempt by the Camp to avoid public accountability.

In addition, Johnny Doe has offered his own viewpoints on the matter. *See* Exhibit B to Post-Hearing Submission of Evidence. In sum, Johnny Doe is "strongly opposed" to the appointment of a guardian ad litem and contends that his own attorneys, his own parents, and he himself can adequately protect his own best interests. *Id.* Johnny Doe's own words should carry significant weight, if not being completely dispositive of the matter.

Nonetheless, the Camp offers four excerpts from Johnny Doe's medical records to argue that there is an adverse interest between Johnny Doe and his parents. These four medical records do not establish any <u>existing</u> adverse interest, sufficient to support the appointment of a guardian ad litem. All four of the excerpts are

11

multiple years old (September 2011, January 2012, March 2012, and January 2013) and do not reflect any existing issues. Moreover, three of the four excerpts pre-date the filing of this civil action (filed May 29, 2012) and, therefore, have no bearing on this lawsuit. Because these four excerpts simply do not reflect an "existing" adverse interest between Johnny Doe and his parents, the District Court correctly concluded that there was no basis to appoint a guardian ad litem. Hearing Transcript at 26.

From a substantive standpoint, the four medical-record excerpts do not create an adverse interest between Johnny Doe and his parents. Instead, the existence of these four excerpts merely demonstrates the real-life ups-and-downs commonplace for victims of child sexual abuse. For example, in her January 3, 2013 medical note, Dr. Mooney reports that, after completing his December 2012 deposition in this civil action, Johnny Doe "expressed feeling 'great' and as if a weight had been lifted from his shoulders," "was in a very positive mood," "has a great outlook on the situation and demonstrates resiliency," and "discussed his wish to do things now to help other children." *See* Megan A. Mooney, Ph.D. Medical-Record Excerpt (January 3, 2013), Appendix to Response, Tab H. Yet, in her next medical note dated January 10, 2013, Dr. Mooney reports that Johnny Doe is "frustrated" by his "lack of control" over the litigation process. Megan A. Mooney, Ph.D. Medical-Record Excerpt (January 10, 2013), Appendix to Mandamus, Tab C.

The broad variations reflected in Johnny Doe's mood and affect during these back-to-back visits are consistent and common among victims of child sexual abuse. Mooney Depo at 76:13–78:13. As Dr. Mooney explained during her deposition, victims of child sexual abuse generally exhibit symptoms of irritability, combativeness, and defiance. *Id*. These symptoms, in turn, are frequently triggered and exacerbated by stressful events in the victim's life, such as involvement in lawsuits. *Id*. Johnny Doe, as the victim of sexual abuse, has endured similar stressful feelings throughout his course of medical treatment and during the lifespan of this civil action. *Id*.

That being said, Dr. Mooney clearly testified that a victim's decision on whether to pursue legal relief or to testify about their sexual trauma is a decision that should be made "on a case-by-case, client-by-client basis." *Id*. In this situation, Johnny Doe, his parents, his medical providers, and his attorneys have worked together over the course of years to determine which litigation strategies are in Johnny Doe's best interests. Hearing Transcript at 25; Exhibit B to Post-Hearing Submission of Evidence. The Camp simply disregards this truth because it is inconvenient to the Camp's position.

The fact that Johnny Doe expressed some frustration about the legal process multiple years ago does not signify any adverse interest between Johnny Doe and his parents. Rather, this fact reflects that Johnny Doe has suffered and continues to

13

suffer through the normal, expected symptoms associated with child sexual abuse. Even more so, the fact that Johnny Doe, his parents (with existing parental duties), his medical providers (with existing professional duties), and his attorneys (with existing professional duties) have discussed these issues amongst themselves on numerous occasions reflects that Johnny Doe's parents have not adopted any interest adverse to Johnny Doe, but are committed to protecting Johnny Doe's best interests. Accordingly, it seems both unnecessary and hypocritical for the Camp and its counsel—neither of which have any duty to act in Johnny Doe's best interest, and both of which have publicly blamed the Doe Family—to claim that they are now concerned about his best interests. Hearing Transcript at 14–15.

Second, the Camp suggests that the Doe Family's cooperation with the publication of the article "Parents Never Dreamed Sending Their Kid to Camp La Junta Would Turn into a Sexual Abuse Nightmare," by The Houston Press in February 2014 demonstrates that Johnny Doe's parents are not adequately protecting Johnny Doe's desire for anonymity. The Camp's suggestion is again entirely wrong.

At the outset, Johnny Doe knew about and consented to the publication of The Houston Press article because it provided him with a public outlet as an attempted means to correct the years' worth of prior public misrepresentations made by the Camp, and because it furthered his goals of preventing future acts of child sexual abuse through public awareness. The article did not reveal the names or the identities

14

of the Doe Family. And, Dr. Mooney also was aware of the article, and had concluded that the publication of the article did not have any negative impact on Johnny Doe whatsoever. Mooney Depo at 81:11–83:12. Accordingly, the publication of The Houston Press article did not create and does not reflect any adverse interest between Johnny Doe and his parents.

Third, it is altogether unclear what benefit or role a guardian ad litem would serve in this matter. The parties have already mediated this matter twice: in August 2013 and in September 2014. Both mediations were unsuccessful. In addition, there are no current mediations scheduled, nor has any future mediation been requested, ahead of the August 3, 2015 trial date. Accordingly, even if a guardian ad litem were appointed, she would have nothing to do at this time.

More so, regardless of a future mediation or not, a guardian ad litem still could not effectuate any relief in this matter. For example, if a guardian ad litem were appointed and that guardian ad litem concluded in her personal opinion that Johnny Doe's non-monetary demand was unreasonable, neither the guardian ad litem nor the District Court could force Johnny Doe to forego his own litigation objectives. Hearing Transcript at 9, 23. On the other hand, if the guardian ad litem concluded that Johnny Doe's non-monetary demand was incredibly reasonable and should be accepted by a reasonable defendant, neither the guardian ad litem nor the District Court could force the Camp to accept the demand. Accordingly, there is no

15

substantive relief to be gained from the appointment of a guardian ad litem in this matter.

**B.    THE CAMP WILL NOT SUFFER IRREPARABLE HARM ABSENT MANDAMUS**

In order to be entitled to mandamus relief, the realtor must show that it has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). This rule exists to ensure appellate courts do not "embroil themselves unnecessarily in incidental pre-trial rulings of the trial courts" such that mandamus "would soon cease to be an extraordinary writ." *Packer*, 827 S.W.2d at 842, *quoting Braden v. Downey,* 811 S.W.2d 922, 928 (Tex. 1991).

Here, the Camp has not alleged, let alone established, that "it" lacks any remedy on appeal. This is so because the Camp is not seeking to protect or to enforce any of its own rights or interests. Instead, the Camp is solely attempting to enforce Johnny Doe's interests. Mandamus Brief at 3 ("In light of the importance of the issues, and the fundamental rights of the minor Real Party in Interest at stake, this appeal is deserving of an oral argument."), 28 ("The irreparable harm to be suffered in this case would be visited on Johnny Doe.") Because the Camp has not alleged that it lacks an adequate remedy on appeal, and instead has only alleged that Johnny Doe lacks an adequate remedy on appeal, the Camp has not established the second prong of its mandamus burden.

16

Put simply, the Camp, as realtor in this mandamus proceeding, was required to allege and to establish that it—not Johnny Doe—lacked an adequate remedy on appeal. Having failed to do so, the Camp failed to meet their burden.

### C. THE CAMP LACKS STANDING TO BRING THIS MANDAMUS PROCEEDING

To have standing to bring a mandamus proceeding, the realtor must have a justiciable interest in the underlying controversy. *See In re Houston Chronicle Pub. Co.*, 64 S.W.3d 103, 106 (Tex. App.—Hous. [14th Dist.] 2001); *see also Terrazas v. Ramirez*, 829 S.W.2d 712, 722 (Tex. 1991). "Standing consists of some interest peculiar to the person individually and not as a member of the general public." *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Thus, to have standing to bring a mandamus proceeding, the realtor must establish that it has suffered a real injury that will actually be resolved by the mandamus proceeding. *See, e.g.*, *Sneed v. Webre*, ___ S.W.3d ___, 2015 WL 3451653 at *7 (Tex. May 29, 2015) (identifying the general test for "standing" in Texas).

In this matter, the Camp lacks standing to bring a mandamus proceeding. The Camp acknowledges that it has not suffered any individualized injury. In sum, the Camp's rights simply have not been impacted by the District Court's decision. Instead, only Johnny Doe's and his parents' rights have been impacted by the District Court's decision. In substance, the Camp is attempting to act on behalf of Johnny Doe, even though the Camp does not act in any representational capacity for him

17

and even though Johnny Doe is opposed to the relief sought.  This posture simply does not afford the Camp standing to bring a mandamus proceeding on behalf of Johnny Doe.

### D. COUNSEL'S STATEMENTS AT THE ORAL HEARING ARE ADMISSIBLE EVIDENCE

In its mandamus brief, the Camp argues that the statements made by counsel for Johnny Doe during the oral hearing are not admissible evidence.  Mandamus Brief at 22.  While it is generally true that statements made by attorneys must be made under oath to be considered as evidence, the Texas Supreme Court recognized an exception to that general rule in *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).  There, the Texas Supreme Court held that an opponent of the testimony waives the oath objection by failing to object when it knows or should know that an objection is necessary.  *Id*.; *see also Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Hous. [1st Dist.] 2006).

During the oral hearing, counsel for Johnny Doe made a number of factual assertions on the record to rebut evidence offered by the Camp.  Hearing Transcript at 25–26.  Counsel for the Camp did not object to any of these factual assertions, and counsel for the Camp knew or should have known of the need to object to these factual assertions because the assertions were being offered to rebut the factual record being made by the Camp.  Because the Camp failed to object to the oath

18

requirement during the oral hearing, the factual assertions made by counsel for Johnny Doe are considered evidence for purposes of this mandamus proceeding.

## **CONCLUSION**

For the foregoing reasons, the Doe Family respectfully requests that the Appellate Court deny the Camp's Petition for Writ of Mandamus.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP

/s/   *Bob Wynne*

Rusty Hardin
rhardin@rustyhardin.com
State Bar No. 08972800
Andy Drumheller
adrumheller@rustyhardin.com
State Bar No. 00793642
Robert P. Wynne
bwynne@rustyhardin.com
State Bar No. 24060861
1401 McKinney, Suite 2250
Houston, Texas 77010-4035
(713) 652-9000
(713) 652-9800 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS/**
**Real Parties in Interest Johnny Doe,**
**Jane Doe, and John Doe**

## CERTIFICATE OF COMPLIANCE

This is to certify that the Response to petition for Writ of Mandamus is 4,654 words in accordance with Texas Rule of Appellate Procedure 9.4(i)(2)(B).

/s/   *Bob Wynne*

_____

Bob Wynne

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served on all counsel of record on May 27, 2015, pursuant to Texas Rules of Appellate Procedure.

/s/   *Bob Wynne*

_____

Bob Wynne

# APPENDIX

| Tab No. | Description |
|---------|-------------|
| A | Motion for Appointment of Guardian Ad Litem |
| B | Joint Motion to Transfer Venue, and Subject Thereto Original Answers, Special Exceptions, and Counterclaims to Plaintiffs' Second Amended Petition With Requests for Disclosures |
| C | Motion to Designate Responsible Third Party |
| D | Motion to Strike and Objection to Motion to Designate Responsible Third Party |
| E | Deposition of Megan Mooney, Ph.D. (filed *in camera*) |
| F | Post-Hearing Submission of Evidence (Ex. B filed *in camera*) |
| G | Objection to and Motion to Strike Post-Hearing Submission of Evidence |
| H | Megan A. Mooney, Ph.D. Medical-Record Excerpt (Jan. 3, 2013) (filed *in camera*) |

# TAB A

| | | |
|---|---|---|
| **JOHNNY DOE, PLAINTIFF by and** | § | **IN THE DISTRICT COURT OF** |
| **Through his Parents, JOHN DOE** | § | |
| **and JANE DOE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CAMP LAJUNTA 1928, LP., and** | § | |
| **BLAKE SMITH** | § | |
| **Defendants.** | § | **333rd JUDICIAL DISTRICT** |

## FIRST AMENDED MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM

Defendants Camp LaJunta 1928 L.P., Blake Smith, Camp LaJunta, Inc., and CLJ Management Systems, L.L.C. (hereinafter collectively sometimes referred to as "Defendants"), file this First Amended Motion for Appointment of Guardian Ad Litem:

## I. INTRODUCTION[1]

This suit for alleged damages is bought by John Doe and Jane Doe (sometimes hereafter "the Parents"), as next friends of Johnny Doe, their seventeen (17) year old son. Plaintiff alleges he was sexually molested by a former employee of one of the Defendants while attending summer camp in 2009. Plaintiff also asserts defamation claims against certain Defendants. Discovery has revealed that the Parents' interests in this litigation conflict in certain important respects with the interests of Plaintiff Johnny Doe, and that his Parents' own actions in connection with this event and this litigation have and are continuing to harm Johnny Doe. In light of the overwhelming and uncontroverted evidence demonstrating the Parents' damaging

---

[1] Because Plaintiffs brought this action as a "John Doe" proceeding to protect the identity of the Minor Plaintiff, and due to the sensitive and confidential nature of the mental health and treatment records, and in light of the Agreed Protective Order, the exhibits which support this motion will not be filed with the motion but will be submitted to the Court for *in camera* inspection, and will be made the subject of a Motion to Seal.

1

actions and conflicting interests with those of Johnny Doe, Defendants seek, in the best interests of seventeen (17) year old Johnny Doe, the Appointment of a Guardian Ad Litem to represent the interests of Johnny Doe henceforth in this matter, pursuant to Texas Rule of Civil Procedure 173.2(a)(1).

## II.  ARGUMENT AND AUTHORITIES

This suit was brought by John and Jane Doe, his parents, as next friends of the minor, Johnny Doe.  Texas Rule of Civil Procedure 173.2 provides that a court *must* appoint a Guardian Ad Litem for a party represented by a next friend or guardian if the next friend or guardian appears to the Court to have an interest adverse to the party. *Tex.R.Civ.P. 173.2.*  The Court may appoint the Guardian Ad Litem on the motion of *any* party or on its own initiative. *Tex.R.Civ.P. 173.3.*  The Guardian Ad Litem's role is to assist in protecting the interests of the child when a conflict of interest arises between the child and the child's guardian or next friend. *Land Rover U.K. v. Hinojosa,* 210 S.W.3d 604, 607 (Tex. 2006).

There is overwhelming evidence in this case to establish significant, adverse and conflicting interests between seventeen (17) year old Johnny Doe and his Parents to warrant the appointment of a Guardian Ad Litem.  Johnny Doe has repeatedly expressed his wish to "put this matter [the alleged abuse and this lawsuit] behind him," and he has reported to his mental healthcare providers that his Parents, most often his mother in particular, have disregarded his desire to "have more control" over his lawsuit and settlement discussions.[2]  The evidence in this

---

[2] Exhibit A, Depelchin Children's Center records of Megan Mooney, Ph.D, reported on:
    January 10, 2013
Exhibit B, Michelle M. Forrester, Ph.D./Diane Barghi Therapy Note records reported on:
    September 12, 2011,January 3, 2012
    March 22, 2012, 2:00 p.m.

2

case goes far beyond a simple desire by Johnny Doe to put this matter behind him. Rather it demonstrates some of the conflicting interests between Johnny Doe and his Parents regarding this litigation, and some of the harm his Parents, though presumably acting with the best of intentions, have nevertheless regrettably caused Johnny Doe to suffer in the past, in the present and potentially again in the future. This Court has an opportunity to hopefully prevent such future harm through the appointment of a Guardian Ad Litem.

## A. Background

One of Johnny Doe's therapists, Dr. Megan Mooney, is a staff psychologist at DePelchin Children's Center in Houston.[3] She first met Johnny Doe in July of 2012.[4] Her goal as clinical psychologist is to work with patients to address problems and help them improve their lives.[5]

Dr. Mooney diagnosed Johnny Doe as suffering from post-traumatic stress disorder.[6] Mooney found the sources of Johnny Doe's post-traumatic stress disorder ("PTSD") were: (1) the abuse he suffered at the camp; (2) [the abuser's criminal] trial; and (3) Johnny Doe having to reenact the sexual abuse as part of the legal proceedings. Mooney concluded the criminal trial was not helpful for Johnny Doe.[7]

Fortunately, Dr. Mooney's treatment was so successful, that as a result of her therapeutic treatment of Johnny Doe, Dr. Mooney was able to find that as of April 18, 2013, Johnny Doe was symptom free of PTSD.[8] Unfortunately, his problems re-surfaced after a Houston Press

---

[3] Mooney Deposition, P. 4, L. 18-23

[4] Mooney Deposition, P. 9, l. 7- 9.

[5] Mooney Deposition, P. 5, L. 21-25 - P. 6, L 1-15

[6] Mooney Deposition, P. 12, L. 11-17

[7] Mooney Deposition, P. 13, L. 18-25, P. 14, L. 1-2.

[8] Mooney Deposition, P. 39, L. 18-22; P. 60, L. 5.

newspaper article, written with the assistance of Jane Doe and Dr. Mooney, was published on February 20, 2014,[9] as will be discussed below.

## B. Harmful and Conflicting Actions of Johnny Doe's Mother

### 1. Litigation vs. Settlement

On August 15, 2011, one of Johnny Doe's treating mental health care providers, Diane Barghi suggested to Jane Doe that she should move past "everything" and that Johnny Doe could not move past this if his mother would not move past it.[10] Barghi also stated it was hard for Johnny Doe to move on because his mom Jane Doe would not stop talking about it.[11] Again, on September 12, 2011, Johnny Doe related to Barghi, that his mom Jane Doe "is talking about [his] case constantly, and he doesn't want to think about it anymore." Johnny Doe explained that he "wanted to move on and was not going to let [the abuse] ruin his life."[12]    Johnny Doe discussed with Dr. Michelle Forrester, another of his therapists,  the fact that his mother Jane Doe talks "about it [the incident and the litigation] constantly, and he doesn't want to think about it anymore."[13] Further, Johnny's mother Jane Doe has admitted to being untruthful and misleading to Johnny Doe. She admitted in her deposition that Johnny Doe "doesn't realize you can get money from [a lawsuit], but feels he is helping children by trying to prevent this from happening again."[14] As with the criminal case, this civil case if tried, particularly because it will be tried in public, will be no less traumatic for Johnny Doe than the criminal trial of his attacker was, where

---

[9] Mooney Deposition, P. 58, L. 22-25, P. 59, L. 1-21.

[10] Barghi Deposition, P. 111, L. 20-23.

[11] Barghi Deposition, P. 111, L 13-19.

[12] Barghi Deposition, P. 113, L. 12-22.

[13] Exhibit B, Michelle M. Forrester, Ph.D./Diane Barghi Therapy Note records reported on: September 12, 2011

[14] Jane Doe's Deposition, P. 188-189, L. 8 – 21.

at least his identity was shielded. It's safe to assume that this case, if tried, will draw widespread news media attention.

As stated, Johnny Doe, who was symptom-free on April 13, 2013, saw problems re-surface after a Houston Press article was published on February 20, 2014. Johnny Doe's mother, *despite an Agreed Protective Order prohibiting parties and their attorneys from disclosing confidential information regarding the case*, *entered by Judge Halbach in August 2012,* agreed to be interviewed and to provide voluminous documents for an article to be published in the Houston Press newspaper concerning Johnny Doe's abuse.[15]

## 2. Mr. and Mrs. Doe - Cause of Johnny Doe's Alleged Defamation

Though his identity, on information and belief, had not been previously made public, in 2012, Johnny Doe's own Parents told their friends the "Jones" that Johnny Doe was the child involved in the camp abuse incident in question.[16] Other witnesses corroborated this startling revelation by the Parents. According to another family friend, S. A.[17], Johnny Doe's parents were the ones who revealed the identity of Johnny Doe to the public. S.A. testified that he found out that Johnny Doe was revealed as the victim by his Parents, after talking with the "Jones." Shortly thereafter Johnny Doe's father called S.A. and repeated the story to S.A.[18]

---

[15] Mooney Deposition, P. 52, L. 4-25; P. 51, L. 1; P. 57, L 3-24

[16] John Doe's Deposition, P 83, L. 1 – P. 84, L24.

[17] "S.A." is being used due to the confidential nature of the proceedings and protective order in place.

[18] S.A. Deposition, P. 49, L 23 – P. 51, L. 8

S.W.[19] was Johnny Doe's principal at H.S.[20] Middle School. Johnny started 6th grade at H.S. in 2010.[21] S.W. was initially unaware that Johnny was undergoing counseling, but was informed by his Parents John and Jane Doe, prior to the start of the school year, of Johnny's "issues."[22] This included reports of joking comments made by other students at Johnny Doe's former school regarding the camp incident, though those students didn't know Johnny Doe was the camper involved.

The people "in the community" at H.S. were unaware of Johnny Doe's [abuse history], prior to his enrolling at H.S.[23] S.W. had a discussion with Johnny Doe after her conversation with his Parents to let Johnny know she was aware of the abuse. S.W. said she told Johnny he could see her at any time he needed to, and she also informed his teachers he could do so.[24] S.W. would also tell certain teachers about Johnny Doe's "special circumstances" prior to Johnny participating in class trips. S.W. received permission to do so from Johnny Doe's parents.[25]

Johnny Doe expressed considerable frustration to his mental health care practioners concerning how much of his personal business, including his history of abuse at summer camp, his mother Jane Doe had shared with other people, without Johnny Doe's permission.[26] Johnny

---

[19] S.W. is used due to the confidential nature of the proceedings and protective order.

[20] H.S. is used due to the confidential nature of the proceedings and protective order.

[21] S.W. Deposition, P. 10, L. 3 - 6

[22] S.W. Deposition, P. 12, L. 4 – P. 13, L. 6

[23] S.W. Deposition, P. 13, L. 23 – P. 14, L. 6

[24] S.W. Deposition, P. 16, L. 20 – P. 17, L. 3

[25] S.W. Deposition, P. 16, L. 5 – P. 18, L. 3

[26] Mooney Deposition, P. 18, L. 12-19

Doe's mother's sharing his private information with others caused him agitation and stress.[27] Mooney tried to work through the problems between Johnny Doe and his Mom caused by her sharing his personal information with others without his permission.[28] In an October 18, 2012 progress note, in another significant admission, Johnny Doe's mother validated Johnny's concerns about her revealing his private information without his permission, and said she would "try to be more mindful of this in the future."[29]

In an October 23, 2012 progress note, Dr. Mooney noted Johnny Doe was "pissed off" because his mother had lied to him and tried to trick him into something that was not true. This conflict was in relation to his session with Dr. Mooney from the prior week noted above, [October 18, 2012], and Johnny Doe's overall [lack of] trust in his mother.[30]

Despite an Agreed Protective Order of August, 2012, entered by Judge Halbach prohibiting parties and their attorneys from disclosing confidential information regarding the case, both Dr. Mooney and Jane Doe, Johnny Doe's mother agreed to be interviewed for a February 20, 2014 article in the Houston Press newspaper concerning Johnny Doe's abuse.[31] Johnny Doe's mother Jane Doe also furnished substantial documents to the Houston Press concerning Johnny Doe's abuse in connection with that article, all in violation of Judge Halbach's August 2012 Order.[32] Jane Doe made clear to the Houston Press author that it has

---

[27] Mooney Deposition, P. 19, L. 9-17

[28] Mooney Deposition, P. 20, L. 1-12

[29] Mooney Deposition, P. 20, L. 22-25; P. 21, L 1-11

[30] Mooney Deposition, P. 22, L. 10-25; P. 23, L 1-3

[31] Mooney Deposition, P. 52 L. 16 – P. 53, L. 4.

[32] Mooney Deposition, P. 52, L. 4-25; P. 51, L. 1; P. 57, L 3-24

been *her* mission to "make sure justice was served" and to "make things right."[33] The reporter noted in the article that Jane Doe "put together a binder six inches thick, carefully organizing it with her notes, photos, printouts and everything else…. [which was made available to the reporter.]" Jane Doe's participation in the interview and publication of this article clearly illustrates conflicting interests between his Parents and Johnny Doe. While potentially offering the Parents some level of "vindication" in telling *their* story in the way in which *they*, rightly or wrongly, perceived things to be,[34] the news story clearly served to renew interest in the event and reignite discussions and rumors being spread throughout the community, which was certainly not in the best interests of Johnny Doe. This is further supported by the testimony of Johnny Doe's therapist, Dr. Megan Mooney, who admitted in her deposition that Johnny Doe's mother's "sharing" of his private story with a newspaper "could trigger problems in child who was previously asymptomatic of PTSD."[35]

### C. Johnny Doe Wants Some Control Over His Lawsuit

Seventeen year old Johnny Doe has repeatedly expressed frustration over his lack of control over his own lawsuit. Johnny Doe says he feels very strongly about needing a sense of control over his lawsuit.[36] Johnny Doe told his health care providers he is frustrated by his lack of control over settlement discussions in his civil case.[37] Johnny Doe told his therapist that "his

---

[33] Exhibit C, Houston Press Article, February 19, 2014

[34] Undersigned defense counsel hereby advises the Court, that when he was contacted by the reporter for the Houston Press, he advised the reporter that pursuant to the provisions of the Agreed Protective Order he could not comment. The article as published reflects this response.

[35] Mooney Deposition, P. 60, L. 5-13; L. 15 – 24.

[36] Mooney Deposition, P. 32, L. 4-9

[37] Mooney Deposition, P. 31, L. 4-19

Dad was basically making him testify."[38]   In March 2012, Johnny Doe reported to his therapist that he believed his Parents were hiding things from him related to the case, and further that his mother was lying to him about it.[39] Johnny Doe further expressed his displeasure with the extent of his mother's involvement in the legal process.[40]   These conflicting and adverse positions between seventeen (17) year old Johnny Doe and his Parents are further evidenced by an entry in treating psychologist Dr. Mooney's records, dated January 10, 2013, wherein Johnny Doe "reported feeling frustrated by lack of control he has in deciding whether to accept any proposed settlements in [his] civil case."[41]

**III.**

The desire of Johnny Doe's Parents to proceed with this litigation directly conflicts with Johnny Doe's wishes.  Regrettably, his Parents' own actions have caused harm to their son, Johnny Doe. It's enlightening to note that while Jane Doe admitted Johnny had told her that he had "moved on," nevertheless she would not do so until the perpetrator was in jail.[42] Yet, even after the criminal trial was over (May 2011), and the perpetrator had been imprisoned (October 2011), his Parents did not honor Johnny Doe's wishes regarding this litigation. Clearly, as has been shown by compelling testimony from three (3) of his own mental health care providers,

---

[38] Exhibit B, Michelle M. Forrester, Ph.D./Diane Barghi Therapy Note records reported on:
    February 28, 2011
[39] Exhibit B, Michelle M. Forrester, Ph.D./Diane Barghi Therapy Note records reported on:
    March 22, 2012
[40] Exhibit A, Mooney records reported on:
    November 20, 2012
    November 26, 2012
[41] Exhibit A, Mooney records reported on:
    January 10, 2013
[42] Exhibit B, Michelle M. Forrester, Ph.D./Diane Barghi Therapy Note records reported on:
    August 15, 2011

Barghi, Dr. Mooney and Dr. Forrester, and various admissions of his own mother, Johnny Doe's interests are in conflict with those of his Parents, and Johnny Doe should be represented at this stage and henceforth, by a Guardian Ad Litem.

This litigation is clearly an emotionally charged matter for John Doe and Jane Doe who have made clear that they will not rest until "justice is done" at least their version of "justice," regardless of the consequences to their son. As such, no matter how well-intentioned John Doe and Jane Doe may be, their own emotional and personal interests have been unquestionably shown to have clouded their opinions with respect to what is in the best interest of their seventeen (17) year old son Johnny Doe. While most respectively conceding his Parents' belief they are acting in Johnny Doe's best interest, an impartial Guardian Ad Litem, considering the Parents' views and Johnny Doe's wishes, might reach a different conclusion.

The conflicting and adverse positions his Parents have taken relative to Johnny Doe's wishes and desires, is further evidenced in connection with Johnny Doe's defamation claims. Johnny Doe has alleged in this suit, brought by his Parents as his next friends, that Defendant Blake Smith defamed Johnny Doe by orally stating that Johnny had "emotional problems," was "a problem child," was "lying about the allegations," and that Johnny Doe's "family was litigious."[43] Despite these allegations, there has been *no evidence* that Blake Smith ever divulged the identity of Johnny Doe and/or his family. Publication is a necessary element of a defamation claim. Incredibly, the uncontested evidence has established that *Johnny Doe's own Parents* were the ones who made Johnny Doe's identity as the victim of the alleged abuse known to family

---

[43] See Plaintiff's Second Amended Petition, Paragraphs 38 and 43.

friends, members of his community, and school administrators.[44] As such, any injury to Johnny Doe's reputation (which is denied) resulted from the actions of his *Parents* – the same people representing Johnny Doe as his next friends in this litigation!

It is axiomatic that a public trial of this case will visit substantial and negative consequences on Johnny Doe. While his Parents claim they are not seeking damages for themselves, the pursuit of this litigation has been conclusively shown, through the sworn testimony of Mrs. Doe herself, to be driven by her own personal and emotional needs, which have been shown to conflict with her son's wishes and needs. As such, John Doe and Jane Doe are not in the best position to impartially assess the true costs, benefits and potential negative consequences to Johnny Doe in making decisions on whether to try this case to conclusion or resolve it via settlement. While the evidence makes clear that Johnny Doe and his Parents have different opinions with respect to the litigation, *Johnny Doe is the only one without a voice*, and absent some protection being afforded by this Court via the appointment of a Guardian Ad Litem, seventeen (17) year old Johnny Doe is at the mercy of his Parents and their interests which conflict with his.

Accordingly, the appointment of a Guardian Ad Litem to serve as an impartial representative of and advisor to Johnny Doe, on the Court's behalf, with respect to further handling of this litigation is in the best interest of Johnny Doe, the business of the Court, and justice, and is reasonable and appropriate in this case.

Clearly, the appointment of a Guardian would not prejudice Johnny Doe. No conflicts or potential conflicts between the interests of Johnny Doe and his Parents would be created by

---

[44] See quotes from Deposition of Susan S.W. above.

appointing a Guardian Ad Litem, and no adverse impact to Johnny Doe by having the assistance of a Guardian Ad Litem would occur. Johnny Doe's rights would be protected by a clearly unbiased person able to set aside emotions, something understandably very difficult for a parent to do in a case involving one's own child. The Parents' thoughts of revenge, punishment and similar matters can negatively impact the Parents' ability to impartially analyze relevant matters pertinent to the litigation in the best interests of Johnny Doe. The Parents' inability to think impartially could subject Johnny Doe to a public trial with the attendant stress, anxiety and potential emotional harm such publicity and public disclosure of his identity will cause just as he is entering his senior year of high school.

By analogy, Judges and counsel must voluntarily recuse themselves from matters pursuant to the applicable code of ethics where the Judge or counsel cannot be completely impartial. Both are ethically bound to recuse themselves in the best interest of the client to avoid even the appearance of impropriety. Based on the record cited herein there is substantial evidence of conflicts, or at minimum, appearances of conflicts between Parents and Johnny Doe concerning the conduct of this litigation. A Guardian Ad Litem could help Johnny Doe evaluate his options based on what is best for him personally, as opposed to the differing wishes of his Parents, who regardless of how loving and supportive they no doubt are, can't easily be impartial in this matter.

Defendants do not bring this motion to criticize Johnny Doe's Parents. Johnny Doe's Parents are to be praised for their courage, tenacity and love for their child. Rather, this Motion is brought on behalf of the minor Plaintiff, so that the concerns he has repeatedly raised with his mental health care providers regarding his Parents' actions which are adverse to his own interests, can be addressed by a Guardian Ad Litem, before any further harm is done.

**IV.**

Therefore, Defendants would most respectfully show, based on the abundance of evidence in the record, that it is in the best interest and for the protection of Johnny Doe, that a Guardian Ad Litem be appointed by this Court for the purpose of providing full and adequate representation of the interests of Johnny Doe through conclusion of this litigation, including participation in any and all settlement discussions and attendant decision-making, and all necessary monitoring and assisting in the litigation of this cause, acting at all times with the best interest of Johnny Doe in mind, and reporting to the Court on same. Accordingly, Defendants respectfully request that this Court appoint a Guardian Ad Litem for the purposes stated.

WHEREFORE, PREMISES CONSIDERED, Defendants request that for the reasons stated herein, a Guardian Ad Litem be appointed by this Honorable Court to represent the interests of Johnny Doe, a minor, in all respects.

Respectfully submitted,
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

_/s/ *Kent M. Adams*_____
**KENT M. ADAMS**
State Bar Number 00869200
Kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
State Bar Number 24031998
Sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
State Bar Number 24038382
Kristie.johnson@lewisbrisbois.com
24 East Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile
**ATTORNEYS FOR DEFENDANTS
CAMP LAJUNTA 1928, LP, BLAKE SMITH,
CLJ MANAGEMENT SYSTEMS, LLC AND
CAMP LAJUNTA, INC.**

## A NOTE CONCERNING EXHIBITS

Exhibits referenced herein will be submitted to the Court Only, for In Camera review only and will be subject to a Motion to Seal.

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that the subject of this motion has been discussed with Plaintiffs' counsel to determine if the Motion can be filed as agreed. Plaintiffs oppose the filing of this motion.

_/s/ *Kent M. Adams*_____
KENT M. ADAMS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Motion to Appoint Guardian Ad Litem has been served on the following by electronic service on this 7th day of May, 2015.

Rusty Hardin & Associates, LLP
Rusty Hardin
Andy Drumheller
Robert P. Wynne
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010

_/s/ *Kent M. Adams*_____
KENT M. ADAMS

| | | |
|---|---|---|
| **JOHNNY DOE, PLAINTIFF by and** | § | **IN THE DISTRICT COURT OF** |
| **Through his Parents, JOHN DOE** | § | |
| **and JANE DOE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CAMP LAJUNTA 1928, LP., and** | § | |
| **BLAKE SMITH** | § | |
| **Defendants.** | § | **333rd JUDICIAL DISTRICT** |

## ORDER APPOINTING GUARDIAN AD LITEM

On this day, the Court considered the Motion to Appoint Guardian Ad Litem filed by Defendants Camp LaJunta 1928, LP, Blake Smith, Camp LaJunta, Inc. and CLJ Management Systems, L.L.C., the response, and the arguments of Counsel, and has found the motion to be meritorious. Accordingly, it is

ORDERED that the Motion to Appoint Guardian Ad Litem be and hereby is, GRANTED; it is further

ORDERED that _____, be and hereby is appointed as Guardian Ad Litem to represent the interests of Johnny Doe, a minor Plaintiff herein. It is further ordered that the Guardian Ad Litem will be paid a fee of $ _____, [or an hourly rate of $ ____], plus reasonable expenses, to be assessed equally between Plaintiffs as a single group, and the Defendants as a single group.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

4845-9635-6387.1                                   15

Approved as to Form and Entry Requested:

**LEWIS BRISBOIS BISGAARD & SMITH, LP**

_/s/ *Kent M. Adams*_____
**KENT M. ADAMS**
State Bar Number 00869200
Kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
State Bar Number 24031998
Sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
State Bar Number 24038382
Kristie.johnson@lewisbrisbois.com
24 East Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile

**ATTORNEYS FOR DEFENDANTS**
**CAMP LAJUNTA 1928, LP, BLAKE SMITH,**
**CLJ MANAGEMENT SYSTEMS, LLC, AND**
**CAMP LAJUNTA, INC.**

# TAB B

**CAUSE NO. 2012 - 31192**

| | | |
|---|---|---|
| JOHNNY DOE, PLAINTIFF by and | § | IN THE DISTRICT COURT OF |
| Through his Parents, JOHN DOE | § | |
| and JANE DOE | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CAMP LA JUNTA 1928, LP. and | § | |
| BLAKE SMITH | § | |
| *Defendants.* | § | 333rd JUDICIAL DISTRICT |

<u>**DEFENDANTS CAMP LAJUNTA, INC., CLJ MANAGEMENT SYSTEMS, L.L.C.,
CAMP LAJUNTA 1928, L.P. AND BLAKE SMITH'S
JOINT MOTION TO TRANSFER VENUE, AND SUBJECT THERETO
ORIGINAL ANSWERS, SPECIAL EXCEPTIONS
AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED PETITION
WITH REQUESTS FOR DISCLOSURE**</u>

COME NOW Defendants CAMP LAJUNTA, INC., CLJ MANAGEMENT SYSTEMS, L.L.C., CAMP LAJUNTA 1928, L.P. and BLAKE SMITH (collectively "Defendants") and file this their Motions to Transfer Venue and Subject Thereto Original Answers, Special Exceptions and Counterclaims with Requests for Disclosure to Plaintiff's Second Amended Petition, and in support thereof would respectfully show as follows:

**I.**

**MOTION TO TRANSFER VENUE**

Plaintiffs have asserted that venue is proper in Harris County under Texas Civil Practice & Remedies Code §15.017 due to a defamation claim alleged against the Defendants. Defendants submit that the defamation claim has no basis in law or in fact and is simply asserted in an effort to inappropriately fix venue in Harris County under the mandatory venue provision of §15.017.

4839-5553-3084.1                                   1

Pursuant to Texas Rule of Civil Procedure 87(3)(a), Defendants specifically deny the alleged facts underpinning the Plaintiffs' defamation claim and any other allegations that venue is proper in Harris County. Defendants specifically deny that they "published statements through oral and written communications with third parties asserting as fact that Johnny Doe was emotionally troubled and lied about the sexual abuse he suffered at Camp LaJunta" as alleged in Paragraph 43, on page 11 of Plaintiffs' Second Amended Petition. Defendants also specifically deny that "all or part of the cause of action accrued" in Harris County, as alleged on page 2 of Plaintiffs' Second Amended Petition. Defendants Camp LaJunta 1928 L.P., and Blake Smith may have "agents and/or representatives who conducted business in Harris County, Texas" as alleged on page 2 of Plaintiffs' Second Amended Petition, but none of the "business" is in any way related to Plaintiffs' allegations in this case. Defendants Camp LaJunta, Inc. and CLJ Management Systems, L.L.C., specifically deny that any of its employees have conducted business in Harris County, Texas. In addition, Plaintiffs John Doe and Jane Doe have abandoned any individual claims they previously asserted, arising out of alleged libel, slander or defamation.

Because there is no basis in law or in fact to support Plaintiffs' defamation claim, Defendants assert that the mandatory venue provided by Texas Civil Practice and Remedies Code §15.017 is inapplicable and does not control in this case. Without application of Texas Civil Practice and Remedies Code §15.017, or any other mandatory venue provision, the general venue rule applies. Under Texas Civil Practice & Remedies Code §15.002, all lawsuits *shall be brought:*

(1)     In the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2)     In the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3)     In the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4)     If Subdivisions (1), (2) and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

Tex. Civ. Prac. & Rem. Code §15.002(a). In this case, subdivisions (1), (2) and (3) all mandate that Kerr County is the proper venue for this lawsuit. Defendant Camp LaJunta, Inc. is a Texas corporation with its principal office in Kerr County. Defendant CLJ Management Systems, L.L.C. is a Texas Limited Liability Company with its principal office in Kerr County. Further, contrary to Plaintiffs' assertion, the alleged events giving rise to this lawsuit all occurred at Camp LaJunta in Kerr County. The fact that Defendant CLJ Management Systems, L.L.C. has one or more representatives that may occasionally conduct unrelated business in Harris County is irrelevant to a determination of proper venue. Defendant Blake Smith's residence is in Kerr County. Defendant Camp LaJunta 1928, L.P. is a Texas limited partnership with its principal office in Kerr County. Further, contrary to Plaintiffs' assertion, the alleged events giving rise to this lawsuit all occurred at Camp LaJunta in Kerr County. The fact that Defendants have one or more representatives that may occasionally conduct unrelated business in Harris County is irrelevant to a determination of proper venue. Only events or omissions "giving rise to the claim" are properly considered in a venue analysis as specified by Texas Civil Practice and Remedies Code §15.002(a)(1). *See Moveforfree.com, Inc. v. David Hetrick, Inc.*, 288 S.W.3d 539, 542 (Tex. App. – Houston [14th Dist.] 2009, no pet.)("In assessing venue under section 15.002(a)(1), we analyze whether the evidence shows that the actions or omissions at issue are materially connected to the cause of action."). Thus, under subdivisions (1), (2) and (3) of the general venue rule, venue is proper in Kerr County only.

Therefore, Defendants' request that the Court grant their Motion to Transfer Venue and transfer this case to the proper county of suit, Kerr County, Texas.

## II.

## ORIGINAL ANSWER SUBJECT TO
## DEFENDANTS' MOTION TO TRANSFER VENUE

Subject to their Motion to Transfer Venue, Defendants file this, their Original Answer to Plaintiff's Second Amended Petition, and in support thereof, would respectfully show as follows:

### A. GENERAL DENIAL

Defendants deny each and every, all and singular, the allegations contained in Plaintiffs' Second Amended Petition and to all supplemental and/or amended pleadings thereto, and demand strict proof in accordance with the Texas Rules of Civil Procedure.

### B. AFFIRMATIVE DEFENSES

Further, Defendants assert the following affirmative defenses:

1. Pleading affirmatively, Defendant Camp LaJunta, Inc. would show that it is not liable in the capacity in which it has been sued.

2. Pleading affirmatively, Defendants would show that Plaintiffs' claims are barred because they were not brought within the applicable statute of limitations.

3. Pleading affirmatively, Defendants would show that any individual claims of John Doe and Jane Doe, have been dismissed by Plaintiffs, therefore, neither John Doe nor Jane Doe are entitled to any individual recovery on their own behalf.

4. Pleading affirmatively, Defendants would show that Plaintiffs' damages, if any, were the result of the criminal acts and intentional torts of Matthew Bovee, which were deviations from the performance of his duties and for Bovee's own purposes. The alleged acts

by Bovee were not in furtherance of Defendants' business, were not within the scope of his employment, and were not for the accomplishment of any object for which Bovee was hired.

5. Pleading affirmatively, Defendants would show that the sole cause, or in the alternative a proximate cause, of Plaintiffs' damages, if any, were the criminal acts and intentional torts of Matthew Bovee, for which these Defendants are not and cannot be held liable.

6. Pleading affirmatively, Defendants would show the criminal acts and intentional torts of Matthew Bovee which are complained of by Plaintiffs were not known or reasonably knowable by Defendants prior to or at the time of the alleged events. Thus, such risk of harm was not reasonably foreseeable by Defendants who therefore had no legal duty to the Plaintiffs arising out of the criminal acts and intentional torts of Matthew Bovee, and therefore Defendants should not be held liable for Plaintiffs' damages, if any.

7. Pleading affirmatively, Defendants would show that the negligent acts and omissions complained of by Plaintiffs were not the proximate cause of the injuries complained of by Plaintiffs.

8. Pleading affirmatively, Defendants would show that damages incurred by Plaintiffs, if any, occurred as a result of several events and factors, including, but not limited to, pre-existing medical and psychological conditions, the actions of John Doe and Jane Doe, and the actions of others, each of which were completely unrelated to any acts or omissions on the part of these Defendants.

9. Pleading affirmatively, Defendants would show that any statements made by these Defendants concerning the Plaintiffs were true and/or would meet the "substantial truth" test as provided by law.

10. Pleading affirmatively, Defendants would show that no statements made by these Defendants related to the subject incident or ensuing criminal investigation identified the Plaintiffs by name.

11. Pleading affirmatively, Defendants would show that no acts or omissions performed by these Defendants were performed with malice and/or gross negligence.

12. Pleading affirmatively, Defendants would show that no false statements were made by these Defendants, and/or that Plaintiffs did not suffer any damages as a result of their reliance upon any statements made by these Defendants.

13. Pleading affirmatively, Defendants would show that Plaintiffs are not included in the class of persons any statute was designed to protect in order to support a negligence *per se* claim, and no these Defendants have not engaged in any activity which could constitute negligence *per se*.

14. Pleading affirmatively, Defendants would show that Plaintiffs did not authorize or ratify any act of Matthew Bovee relative to the incident in question and or the alleged injuries sustained by Plaintiff's.

15. Pleading affirmatively, Defendants would show that any award of medical and/or health care expenses must be limited to the amount actually paid or incurred by or on behalf of the Plaintiffs in accordance with Texas Civil Practice and Remedies Code §41.0105.

16. Pleading affirmatively, Defendants would show that they are entitled to reduction in the amount for which they may ultimately be held responsible based on the jury's findings with respect to the proportion of responsibility assigned to others who caused or contributed to cause to Plaintiffs injury, if any, including but not limited to any party, counter-defendant, co-defendant, settling party, and any designated responsible third party, commensurate with

Sections 32 and 33 of the Texas Civil Practice & Remedies Code. At this time counter defendants include John Doe and Jane Doe. Designated responsible third parties include Matthew Bovee.

17.     Pleading affirmatively, Defendants assert the provisions of Texas Civil Practice and Remedies Code §33.013.

18.     Pleading affirmatively, Defendants would show that pursuant to Texas Civil Practice & Remedies Code §41.005(c), exemplary damages may not be awarded against Defendants because the harm about which Plaintiffs complain arose from the criminal acts of former employee Matthew Bovee. The actions of former employee Matthew Bovee were (1) not authorized by these Defendants; (2) were not the result of these Defendants acting with malice in employing or retaining Matthew Bovee; (3) were not related to any employment of Matthew Bovee in a managerial capacity nor were his criminal actions within the scope of his employment; and (4) neither Defendants, nor any manager working on behalf of Defendants, ratified or approved the criminal conduct of Matthew Bovee.

19.     Pleading affirmatively, Defendants would show that any damages awarded against Defendants are limited by Texas Civil Practice and Remedies Code Chapter 41 and subject to the substantive and procedural safeguards set forth in that chapter.  Such damages are further limited by the Due Course of Law Clause of the Texas Constitution, and are subject to the substantive and procedural safeguards applicable under such constitutional provisions.

20.     Pleading affirmatively, Defendants would show that Plaintiffs are not entitled to an award of exemplary damages and that the assessment of exemplary damages against these Defendants would be unconstitutional under Article 16 of the Constitution of the State of Texas, Section 26 and pursuant to *General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex.

1993). In the alternative, any award of exemplary damages should be limited pursuant to the applicable provisions of the Texas Civil Practice and Remedies Code.

21. Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiffs are hereby placed on notice that any documents produced by Plaintiffs, Defendants, or any other party to this litigation, may be used during pretrial hearings and at trial.

22. Defendants respectfully reserve the right to amend, subject to their Motion to Transfer Venue, this Answer to Plaintiffs' Petitions as Defendants' investigation and discovery in this case permit, as is their right and privilege under the Texas Rules of Civil Procedure and the laws of the State of Texas.

**III.**

**SPECIAL EXCEPTIONS SUBJECT TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

In addition, subject to their Motion to Transfer Venue, Defendants file these Special Exceptions to Plaintiffs' Second Amended Petition pursuant to Texas Rules of Civil Procedure 90 and 91, as follows:

1. Defendants specially except and object to Plaintiffs' failure to separately number each paragraph in the Original Petition in violation of Rule 50 of the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs be required to replead to comply with Rule 50.

2. Defendants specially except and object to the allegations made by Plaintiffs in Paragraphs 42 through 46, on page 11 of Plaintiffs' Second Amended Petition because Plaintiffs fail to state which Defendant(s) allegedly made defamatory statements; the specific defamatory statements made by Defendant(s); and, Plaintiffs fail to state to whom Defendants made any allegedly defamatory statements. Moreover, Plaintiffs fail to state how Plaintiff Johnny Doe, the only Plaintiff with claims based on alleged defamation, suffered pecuniary injury as a result of

the alleged defamatory statements. Plaintiffs' failure to properly plead the facts underlying the defamation claim deprives Defendants of a reasonable opportunity to prepare their defense and as such is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 42 through 46 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

3. Defendants specially except and object to the allegations in Paragraphs 57 through 62 on pages 14 and 15 of Plaintiffs' Second Amended Petition regarding assertion of misrepresentations of fact because Plaintiffs fail to set forth any specific misrepresentations of any specific facts, by any specific Defendant. Moreover, Plaintiffs failed to state how those alleged misrepresentations of fact were relied upon and by whom, and further how that reliance resulted in what damage. Plaintiffs' inadequate pleading deprives Defendants of a reasonable opportunity to prepare their defense and as such is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 57 through 62 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

4. Defendants specially except and object to the allegations in Paragraphs 63 through 65 on pages 15 and 16 of Plaintiffs' Second Amended Petition regarding the "Duty of Master to Control Conduct of Servant" as Plaintiff fail to allege any cause of action recognized under the laws of the State of Texas. To the extent Plaintiffs allege Defendants owed a "duty of a master to control the conduct of his servant" giving rise to a negligence cause of action, duty is only one element of a negligence cause of action, and Plaintiffs have failed to allege facts relative to each of the elements of a negligence claim. Plaintiffs have failed to plead facts establishing a breach of a duty or alleged damages which proximately resulted from such breach. Pleading improved on each element is necessary. Plaintiffs' failure to properly plead the

necessary elements and facts to support a valid cause of action deprives Defendants of a reasonable opportunity to prepare their defense and as such is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 63 through 65 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

5.      Defendants specially except and object to the allegations in Paragraphs 66 through 68 on pages 16 and 17 of Plaintiffs' Second Amended Petition, as Plaintiffs fail to allege facts supporting each element of Plaintiff's negligence *per se* claim. Plaintiffs failed to identify which of Defendants' employees or agents allegedly had cause to believe that a minor had been or may have been abused or neglected as defined in the Texas Family Code. Plaintiffs failed to allege how any of the Defendants' employees or agents had reason to believe that a minor had been abused or neglected. Plaintiffs failed to allege the abuse or neglect in question, as defined in the Family Code. Plaintiffs' failure to properly plead the facts underlying the assertion that the acts or omissions of one or more of the Defendants constituted Negligence *Per Se* deprives each Defendant of a reasonable opportunity to prepare a defense and as such is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 66 through 68 be stricken, or in the alternative that Plaintiffs be required to replead with greater specificity.

6.      Defendants specially except and object to the allegations in Paragraphs 69 and 70, on page 17 of Plaintiffs' Second Amended Petition regarding the alleged tort of assault by infliction of bodily injury as Plaintiffs fail to allege facts supporting element of this cause of action. Plaintiffs' petition fails to identify which of the four Defendants allegedly committed the tort, alleging generically that this was committed by "Defendants." Plaintiffs fail to allege facts upon which any Defendant is alleged to have acted intentionally, knowingly, or recklessly; nor

has Plaintiff alleged how any Defendant made contact with Johnny Doe's person which resulted in bodily injury. Plaintiffs' failure to properly plead the facts underlying the assertion that any of the Defendants committed the tort of assault through infliction of bodily injury deprives the appropriate Defendant(s) of a reasonable opportunity to prepare their defense and as such is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 69 and 70 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

7. Defendants specially except and object to the allegations in Paragraphs 80 through 81 on pages 18 and 19 wherein it is alleged that "other agents, employees, and representatives are vice-principals of Camp LaJunta 1928, L.P." Plaintiffs fail to identify who the "other agents, employees and representatives" are who are alleged to be "vice-principals." Moreover, Defendants specially except and object to the statement that Blake Smith and "other employees, agent, and representatives of Camp LaJunta 1928, L.P. committed a tort" as the identity of the individuals is not provided and no facts are alleged with respect to the alleged tort committed by any of these individuals. Plaintiffs merely allege categories of persons who may be considered a vice-principal, but fail to allege any facts to establish under which category any of the alleged individuals who are alleged to qualify as a vice-principal, fall. Plaintiffs' failure to properly allege facts supporting the assertion that certain individuals, representatives, employees and agents are vice-principals of Camp LaJunta 1928, L.P., deprives Defendants of a reasonable opportunity to prepare their defense, contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claim in Paragraphs 80 through 81 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

8.      Defendants specially except and object to the allegations in Paragraphs 82 through 84, on pages 19 and 20, wherein it is alleged that the generic "Defendants" are liable for acts and omissions for "Failure of Principal to Perform Non-Delegable Duty."  Defendants specially except and object as the alleged "Failure of Principal to Perform Non-Delegable Duty," does not allege a recognized cause of action under Texas law.  To the extent, Plaintiffs claim a "non-delegable duty" doctrine forms the basis of an alleged "vice-principal" liability claim, Plaintiffs' fail to allege sufficient facts to afford Defendants an opportunity to prepare their defenses.  Plaintiffs fail to identify the "other employees" who were allegedly confided with certain duties, or the facts in which those "other employees" allegedly failed to perform such duties.  Plaintiffs' failure to properly plead facts to establish the "legal doctrine" of non-delegable duty and how that "legal doctrine" is alleged to create a cause of action recognized in Texas and applicable in this case, fails to afford Defendants a reasonable opportunity to prepare their defense and as such is contrary to the Texas Rules of Civil Procedure.  Defendants pray that Plaintiffs' claim be stricken or in the alternative that Plaintiffs be required to replead Paragraphs 82 through 84 with greater specificity.

9.      Defendants specially except and object to the allegations in Paragraphs 85 through 87 on page 20 of Plaintiffs' Second Amended Petition regarding the "legal doctrine" of "Use of Force" as Plaintiffs fail to set allege that cause of action recognized under Texas law. Plaintiffs failed to plead how the intentional, unauthorized tortious acts of Bovee were committed in connection with his employment.  Plaintiffs failed to allege how those intentional tortious acts were expected or foreseeable by Defendants in light of Bovee's employment duties. Plaintiffs' failure to plead a recognized cause of action and set forth facts upon which the claim is based deprives Defendants of a reasonable opportunity to prepare their defense and as such is

contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claim be stricken or in the alternative that Plaintiffs be required to replead Paragraphs 85 through 87 with greater specificity.

10. Defendants specially except and object to Plaintiff's allegation of unspecified damages and request that Plaintiffs be required to replead to state the maximum amount of damages sought.

11. Defendants specially except and object to Plaintiffs' allegations on page 21, Paragraph 89(n), and page 23, Paragraph XI, seeking attorney's fees, because Plaintiffs do not cite any statute or authority establishing any basis for recovery of attorneys' fees in this litigation. Defendants request that Plaintiffs be required to replead to specify the statutory basis for this requested relief.

12. Defendants specially except and object to Plaintiffs' allegations in Paragraphs 93 and 94, on page 22, wherein it is alleged that "other employees, agents and representatives of Camp LaJunta 1928, L.P.….were vice-principals of Camp LaJunta 1928, LP," as Plaintiffs fail to identify who the other agents, employees and representatives are who are alleged to be vice-principals. Moreover, Defendants specially except and object to the statement that these unidentified "other employees, agents, and representatives" acts and omissions constitute direct acts and omissions of Camp LaJunta 1928, L.P., as the petition fails to set out facts related to the alleged acts and omissions of these individuals. Defendants' further object as it is claimed that these "other employees, agents, and representatives" acted with malice in causing harm to the Plaintiffs, but the petition fails to identify the individuals allegedly involved or how they acted with malice. Plaintiffs' failure to properly plead which unidentified individuals are vice-principals or facts upon which they are alleged to have acted with malice, denies Defendants a

reasonable opportunity to prepare their defense and as such these allegations are contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraphs 93 and 94 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

13. Defendants specially except and object to Plaintiffs' allegations on pages 22 and 23, Paragraph 95, wherein it is alleged that Matthew Bovee is a vice-principal of Camp LaJunta 1928, L.P., as Plaintiffs' petition fails to set forth the facts for each essential element of such a claim. Plaintiffs failed to allege facts supporting their allegations that Matthew Bovee acted with a specific intent to cause substantial injury to the minor, or acted in a manner which involved an extreme degree of risk of harm to Johnny Doe for which Matthew Bovee would have been aware, or facts to establish that Matthew Bovee proceeded with conscious indifference for the rights, safety, and welfare of Johnny Doe. Plaintiffs' failure to properly plead the facts underlying the assertion that there is no statutory cap on exemplary/punitive damages fails to afford Defendants a reasonable opportunity to prepare their defense and as such this allegation is contrary to the Texas Rules of Civil Procedure. Defendants pray that Plaintiffs' claims in Paragraph 95 be stricken or in the alternative that Plaintiffs be required to replead with greater specificity.

14. Defendants specially except and object to Plaintiffs' allegations in Paragraph 89, wherein it is alleged that "Plaintiffs suffered serious personal injury and mental anguish and trauma. Accordingly, Plaintiffs seeks (sic) the following damages…" This Court ordered Plaintiffs John Doe and Jane Doe to replead and delete any reference to any alleged personal injuries or damages they are claiming for themselves, however in Paragraph 89, Plaintiffs John Doe and Jane Doe are doing just that. Plaintiffs John Doe and Jane Doe therefore ought to be

ordered to replete and delete references to any Plaintiff alleging damages other than Johnny Doe, or in the alternative, Paragraph 89 should be stricken.

## IV.

## COUNTERCLAIM AND REQUEST FOR DISCLOSURE

1. Defendants/Counterclaim Plaintiffs in the above-captioned litigation file these Counterclaims pursuant to Texas Rule of Civil Procedure 97(b) and Texas Civil Practice and Remedies Code Section 33.003, and in support thereof, would respectfully show the Court, as follows:

## A.

## PARTIES AND SERVICE

2. Plaintiff/Counterclaim Defendant John Doe, an individual who resides in Harris County, has appeared in this case and is being served via counsel of record.

3. Plaintiff/Counterclaim Defendant Jane Doe, an individual who resides in Harris County, has appeared in this case and is being served via counsel of record.

4. Defendants/Counterclaim Plaintiffs Camp LaJunta, Inc., CLJ Management Systems, L.L.C., Camp LaJunta 1928, L.P. have appeared in this case and are before the Court.

5. Defendant/Counterclaim Plaintiff Blake Smith has appeared in this case and is before the Court.

## B.

## FACTUAL BACKGROUND

6. In May 2010, the minor Plaintiff Johnny Doe made an "outcry" to his treating mental health professional alleging that he had been sexually assaulted by Matthew Bovee, a former Camp Counselor, when he attended Camp LaJunta ("Camp") ten months earlier in July

2009. This outcry was reported by Plaintiffs to the Kerr County Sheriff's Office and a criminal investigation ensued. The Camp first learned of the alleged assault nearly a year after it allegedly occurred, in response to requests from the Kerr County Sheriff apartment for records concerning Matthew Bovee. The Camp, in coordination with the Sheriff's Office, sent letters to all of its "Camp families" notifying them of the allegations, and asking that any parent with information regarding Matthew Bovee contact the Investigating Officers with the Kerr County Sheriff's Office, or if they were uncomfortable with contacting the officers directly, advise the Camp so that the Camp could relay the information to the authorities. This letter resulted in various parents contacting the Camp to ask for more details and/or information. In response to the various inquiries received, the Defendants/Counterclaim Plaintiffs, at no time, made any defamatory, libelous or slanderous statements concerning the minor Johnny Doe or his family. Moreover, at no time, did these Defendants/Counterclaim Plaintiffs divulge the identity of Johnny Doe or his family.

7. While these Defendants/Counterclaim Plaintiffs have made, and continue to make, every effort to protect the identity of the camper/family, Johnny Doe's parents, Jane Doe and John Doe, shortly after the "outcry," began advising family friends, school administrators, and members of the minor's school community of Johnny Doe's and his association with the incident.

8. Despite the fact that it was Plaintiffs, not any Defendant, who made public the identity of Johnny Doe, the Plaintiffs have asserted claims for defamation, libel and/or slander against these Defendants, and continue to maintain that cause of action. Defendants/Counterclaim Plaintiffs deny they made any defamatory, libelous or slanderous

statement regarding Johnny Doe and/or his family, and further deny that they revealed the identity of Johnny Doe.

9. Should any Plaintiff herein prevail on a cause of action for defamation, libel and/or slander against any Defendant herein, such Defendants/Counterclaim Plaintiffs' acts and/or omissions should be compared with the acts and/or omissions of Mr. John Doe and Mrs. Jane Doe for the purpose of determining percentages of comparative responsibility pursuant to the provisions of Texas Civil Practices and Remedies Code Sec. 33.003(a).

## C.

### COUNTER CLAIM CAUSES OF ACTION

10. The allegations set forth above are incorporated into this section as if set forth fully herein.

11. Pleading now in the alternative, should such be necessary, and while continuing to assert they are not liable to the minor Plaintiff Johnny Doe for defamation, libel and/or slander, or any related cause, Defendants/Counterclaim Plaintiffs by way of counterclaim against Plaintiff/Counterclaim Defendant Jane Doe and Plaintiff/Counterclaim Defendant John Doe, assert the application of the determination of percentages of responsibility provision of the Texas Civil Practice and Remedies Code Section 33.003, and would request that this Court instruct the jury to determine the percentage of comparative responsibility of Plaintiff/Counterclaim Defendant Mrs. Jane Doe and Plaintiff/Counterclaim Defendant Mr. John Doe with that, if any, of the Defendants/Counterclaim Plaintiffs in connection with causing or contributing to cause any damages to the minor Plaintiff Johnny Doe by way of defamation, libel, and/or slander, or any related cause of harm for which recovery of damages is sought.

12.     **REQUEST FOR DISCLOSURE:**  Pursuant to TRCP Rule 194, Plaintiffs are requested to disclose, within 30 days of service of this request, the information or material described in TRCP Rule 194.2 (c), (e), (g), (i), (j), (k) and (l).

## V.

## JURY REQUEST

On information and belief Plaintiffs allege that the value of their claims exceeds the amount required for trial by jury.  The value of Defendants' Counter Claims likewise exceeds the amount required for trial by jury. Defendants desire and are entitled to trial by jury on all issues.

## VI.

**WHEREFORE, PREMISES CONSIDERED** Defendants CAMP LAJUNTA, INC., CLJ MANAGEMENT SYSTEMS, INC., CAMP LAJUNTA 1928, LP AND BLAKE SMITH respectfully request the following:

1.     Following a hearing, the Court grant Defendants' Motion to Transfer Venue and transfer the case to Kerr County, Texas;

2.     Following trial, judgment be rendered for Defendants that Plaintiffs take nothing from Defendants in connection with the lawsuit;

3.     That the Court grant Defendants' Special Exceptions to Plaintiffs' Second Amended Petition and that Plaintiffs be Ordered to file an amended petition complying with Defendants' Special Exceptions within ten (10) days of the Court's Order; and,

4.     That the jury be instructed to compare and apportion percentages of responsibility with respect to claims of defamation, libel and/or slander, between Plaintiff/Counterclaim Defendants John Doe and Jane Doe and Defendants/Counterclaim Plaintiffs; and,

5.    That Defendants be awarded such other and further relief, both legal and equitable, to which they may show themselves justly entitled.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Kent M. Adams*

**KENT M. ADAMS**
Texas Bar No. 00869200
kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
Texas Bar No. 24031998
sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
Texas Bar No. 24038382
kristie.johnson@lewisbrisbois.com
Weslayan Tower, Suite 1400
24 East Greenway Plaza
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile

**ATTORNEYS FOR DEFENDANTS
CAMP LAJUNTA, INC.,
CLJ MANAGEMENT SYSTEMS, INC.,
CAMP LAJUNTA 1928, L.P. AND
BLAKE SMITH**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Pleading was forwarded by facsimile on this 23rd day of July, 2014, to:

Rusty Hardin & Associates, LLP       *Via E-Service*
Rusty Hardin
Andy Drumheller
Robert P. Wynne
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010

*/s/ Kent M. Adams*

_____

**KENT M. ADAMS**

# TAB C

CAUSE NO. 2012 - 31192

| | | |
|---|---|---|
| JOHNNY DOE, PLAINTIFF by and Through his Parents, JOHN DOE and JANE DOE | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CAMP LAJUNTA 1928, LP., and BLAKE SMITH | § § | |
| Defendants. | § | 333rd JUDICIAL DISTRICT |

## DEFENDANTS' MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Camp LaJunta 1928 L.P., Blake Smith, Camp LaJunta, Inc., and CLJ Management Systems, L.L.C. (hereinafter collectively sometimes referred to as "Defendants") file this Motion for Leave to Designate John Doe and Jane Doe as Responsible Third Parties and respectfully show the following:

## I. INTRODUCTION[1]

This suit for alleged damages is brought by John Doe and Jane Doe (sometimes hereafter "the Parents"), as next friends of Johnny Doe, their seventeen (17) year old son. Plaintiff alleges he was sexually molested by a former employee of one of the Defendants while attending summer camp in 2009. Plaintiff also asserts defamation claims against the Defendants, based upon alleged oral and written defamatory statements. Discovery, however, has revealed overwhelming and uncontroverted evidence demonstrating that his own Parents were the

---

[1] Because Plaintiffs brought this action as a "John Doe" proceeding to protect the identity of the Minor Plaintiff, and due to the sensitive and confidential nature of the evidence, and in light of the Agreed Protective Order, the exhibits which support this motion will not be filed with the motion but will be submitted to the Court for *in camera* inspection, and will be made the subject of a Motion to Seal.

4845-9635-6387.1                                    1

producing and/or contributory cause of his alleged defamation damages as it was they who made his identity known.

This case is preferentially set for trial on August 3, 2015. Accordingly, Defendants' motion is being filed on or before 60 days prior to trial. *Tex.Civ.P.Rem.Code §33.004(a).*

## II. GROUNDS FOR DESIGNATING JOHN DOE AND JANE DOE AS RESPONSIBLE THIRD PARTIES

There is ample testimony that it was, in reality, Johnny Doe's Parents who divulged to family, friends, and school officials that their son was the child involved in the camp abuse incident in question, not Defendants. Specifically, John Doe has testified in this case that in 2012, he told their friends the "Jones" that Johnny Doe was the child involved in the camp abuse incident in question.[2] Other witnesses have corroborated this startling admission. Another family friend, S.A.,[3] testified that after receipt of the letter issued by the Camp notifying the parents of all campers of the incident which had been reported, but without identifying the child involved, S.A. discussed the matter with Mr. "Jones", wherein S.A. speculated on the child involved.[4] Shortly after the discussion between S.A. and Mr. "Jones", John Doe contacted S.A. and revealed to him that Johnny Doe was the child involved.[5]

Moreover, S.W.,[6] who was Johnny Doe's principal at H.S.[7] Middle School, has testified that prior to Johnny starting the 6th grade at H.S. in 2010,[8] John Doe and Jane Doe met with her

---

[2] John Doe's Deposition, P 83, L. 1 – P. 84, L24.

[3] "S.A." is being used due to the confidential nature of the proceedings and protective order in place.

[4] S.A. Deposition, P. 49, L 23 – P. 51, L. 8

[5] Id.

[6] "S.W." is used due to the confidential nature of the proceedings and protective order.

[7] "H.S." is used due to the confidential nature of the proceedings and protective order.

and advised her of Johnny's "issues."[9] The people "in the community" at H.S. were unaware of Johnny Doe's [abuse history], prior to his enrolling at H.S.[10] S.W., with the permission of the Parents, then notified certain teachers about Johnny Doe's "special circumstances."[11]

Moreover, Johnny Doe expressed considerable frustration to his mental health care practioners concerning how much of his personal business, including his history of abuse at summer camp, his mother Jane Doe had shared with other people, without Johnny Doe's permission.[12] Johnny Doe's mother's sharing of his private information with others caused him agitation and stress.[13] His mental health provide Dr. Mooney tried to work through the problems between Johnny Doe and his Mom caused by her sharing his personal information with others without his permission.[14] In an October 18, 2012 progress note, in another significant admission, Johnny Doe's mother validated Johnny's concerns about her revealing his private information without his permission, and said she would "try to be more mindful of this in the future."[15]

Additionally, despite an Agreed Protective Order of August, 2012, entered by Judge Halbach prohibiting parties and their attorneys from disclosing confidential information regarding the case, Jane Doe agreed to be interviewed for a February 20, 2014 article in the

---

[8] S.W. Deposition, P. 10, L. 3 - 6

[9] S.W. Deposition, P. 12, L. 4 – P. 13, L. 6

[10] S.W. Deposition, P. 13, L. 23 – P. 14, L. 6

[11] S.W. Deposition, P. 16, L. 5 – P. 18, L. 3

[12] Mooney Deposition, P. 18, L. 12-19

[13] Mooney Deposition, P. 19, L. 9-17

[14] Mooney Deposition, P. 20, L. 1-12

[15] Mooney Deposition, P. 20, L. 22-25; P. 21, L 1-11

Houston Press newspaper concerning Johnny Doe's abuse, providing the reporter with documents regarding Johnny Doe which revealed his identity.[16]

One of the essential elements of a defamation cause of action is that the defamatory statement identify the plaintiff. *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 429 (Tex. 2000); *Newspapers, Inc. v. Mathews*, 339 S.W.2d 890,893 (Tex. 196); *Kaufman v. Islamic Soc'y,* 291 S.W,3d 130, 144 (Tex. App. – Forth Worth 2009, pet. denied). Yet, there has been no allegation in this case that any statement, by any Defendant, specifically identified the Plaintiff. Yet, there is ample evidence that it was John Doe and Jane Doe who actually identified the Plaintiff. As such, there acts should be considered by the jury for purposes of the defamation claim. In other words, but for the actions of his Parents, the identity of Johnny Doe would not have been made known to family, friends, and people in Johnny Doe's school community. Accordingly, John Doe and Jane Doe are each responsible third parties whose acts caused or contributed to the damages Plaintiff claims by way of the alleged defamation.

### III.  OVERVIEW OF LAW ON RESPONSIBLE THIRD PARTY

The term "responsible third party" means "any person who is alleged to have caused or contributed to causing *in any way* the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." *See* TEX. CIV. PRAC. & REM. CODE § 33.011(6) ("the Act") (emphasis added). Any one or more of the aforementioned acts or omissions of John Doe and/or Jane Doe "is alleged to have caused or

---

[16] Houston Press Article.

contributed to causing in any way the harm for which recovery of damages is sought…" *Id.* at § 33.011(6).

The Act permits a defendant to designate a person as a responsible third party by filing a motion for leave to designate at least 60 days before the trial date. *Id.* at § 33.004(a). This motion is being filed more than 60 days before the trial date. The Court "shall grant leave" to designate a responsible third party unless plaintiff files an objection on or before the 15th day before the motion is served. *Id.* at § 33.004(f). Even if an objection is timely filed, the Court "shall grant leave" to designate a responsible third party unless plaintiff establishes (1) the defendant did not plead sufficient facts concerning the alleged responsibility of the putative responsible third party, and (2) after having been granted leave to re-plead, the defendant failed to plead sufficient facts. *Id.* at § 33.004(g). Defendants have pled sufficient facts concerning the alleged responsibility of John Doe and Jane Doe in identifying their son and causing or contributing "in any way" the injuries Plaintiff claims as a result of the alleged defamatory statements.

The right to designate a responsible third party is statutory and does not require Defendants to join the responsible third parties to the suit. The granting of Defendants' motion or a finding of fault against John Doe and/or Jane Doe does not by itself impose liability on the responsible third party. *Id.* at § 33.004(i). Therefore, it matters not whether the responsible third party is a subscribing employer, governmental entity or anyone against whom Plaintiff has no claim. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 868-69 (Tex. 2009) ("Thus, a defendant may designate a responsible third party even though that party possesses a defense to liability, or cannot be formally joined as a defendant, or both.").

By granting this motion, John Doe and Jane Doe are each designated as a responsible third party without further action by the Court or any other party. *Id.* at § 33.004(h). The jury, therefore, is permitted to determine the percentage of responsibility, stated in whole numbers, with respect to Plaintiff, Defendants, Matthew Bovee[17], John Doe, and Jane Doe. *Id.* at § 33.003(b).

WHEREFORE, Defendants, Camp LaJunta 1928 L.P., Blake Smith, Camp LaJunta, Inc., and CLJ Management Systems, L.L.C. respectfully request that the Court grant their Motion for Leave to Designate John Doe and Jane Doe as a Responsible Third Party and award Defendants all other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

_/s/ *Kent M. Adams*_____
**KENT M. ADAMS**
State Bar Number 00869200
Kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
State Bar Number 24031998
Sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
State Bar Number 24038382
Kristie.johnson@lewisbrisbois.com
24 East Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile

**ATTORNEYS FOR DEFENDANTS**
**CAMP LAJUNTA 1928, LP, BLAKE SMITH,**
**CLJ MANAGEMENT SYSTEMS, LLC AND**
**CAMP LAJUNTA, INC.**

---

[17] Bovee was previously designated as a Responsible Third Party in this suit.

## A NOTE CONCERNING EXHIBITS

Exhibits referenced herein will be submitted to the Court Only, for In Camera review only and will be subject to a Motion to Seal.

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that we attempted to contact Plaintiff's counsel by email correspondence and by phone, but Plaintiff's counsel was unavailable and as of the time of filing, Plaintiff's position could not be ascertained. Accordingly, the motion is being submitted as opposed.

_/s/ **_Kent M. Adams_**_____
KENT M. ADAMS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Motion for Leave to Designate Responsible Third Parties has been served on the following by electronic service on this 18th day of May, 2015.

Rusty Hardin & Associates, LLP
Rusty Hardin
Andy Drumheller
Robert P. Wynne
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010

_/s/ **_Kent M. Adams_**_____
KENT M. ADAMS

| | | |
|---|---|---|
| **JOHNNY DOE, PLAINTIFF by and** | § | **IN THE DISTRICT COURT OF** |
| **Through his Parents, JOHN DOE** | § | |
| **and JANE DOE** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CAMP LAJUNTA 1928, LP., and** | § | |
| **BLAKE SMITH** | § | |
| **Defendants.** | § | **333rd JUDICIAL DISTRICT** |

## <u>ORDER</u>

Having considered Defendants', Camp LaJunta 1928 L.P., Blake Smith, Camp LaJunta, Inc., and CLJ Management Systems, L.L.C., Motion for Leave to Designate John Doe and Jane Doe as Responsible Third Parties under Chapter 33 of the Texas Civil Practice and Remedies Code, the Court grants the motion in all respects. It is therefore

**ORDERED, ADJUDGED** and **DECREED** that John Doe and Jane Doe are each designated as a responsible third party and the trier of fact shall determine their respective percentage of responsibility, if any, with respect to Plaintiff's defamation claim.

SIGNED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

Approved as to Form and Entry Requested:

**LEWIS BRISBOIS BISGAARD & SMITH, LP**

_/s/ *Kent M. Adams*_____
**KENT M. ADAMS**
State Bar Number 00869200
Kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
State Bar Number 24031998
Sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
State Bar Number 24038382
Kristie.johnson@lewisbrisbois.com
24 East Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile

**ATTORNEYS FOR DEFENDANTS**
**CAMP LAJUNTA 1928, LP, BLAKE SMITH,**
**CLJ MANAGEMENT SYSTEMS, LLC, AND**
**CAMP LAJUNTA, INC.**

**TAB D**

CAUSE NO. 2012-31192

| | | |
|---|---|---|
| JOHNNY DOE, PLAINTIFF | § | IN THE DISTRICT COURT OF |
| by and through his Parents, JOHN | § | |
| DOE and JANE DOE, | § | |
| | § | HARRIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| CAMP LA JUNTA 1928, L.P., et al. | § | 333rd JUDICIAL DISTRICT |

## MOTION TO STRIKE AND OBJECTION TO
## MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES

Plaintiff, JOHNNY DOE, A MINOR, by and through his parents, JOHN DOE and JANE DOE, INDIVIDUALLY AND AS NEXT FRIENDS OF JOHNNY DOE, A MINOR (collectively, the "Doe Family") submits this Motion to Strike and Objection to Defendants Camp La Junta 1928, L.P., Camp La Junta, Inc., CLJ Management Systems, L.L.C., and Blake Smith's (collectively, the "Camp") Motion for Leave to Designate Responsible Third Parties. *See* Image Number 65468437 (May 18, 2015). The Court should deny the Camp's motion because the Camp has failed to allege and cannot introduce any evidence that Jane Doe and/or John Doe violated any applicable legal standard in a manner that caused or contributed to the damages suffered by Johnny Doe. *See* TEX. CIV. PRAC. & REM. CODE §§ 33.003, .004, .011(6). As a result, the Doe Family respectfully requests that the Court deny the Camp's motion and/or strike the Camp's designation.

## I.
### BACKGROUND

In July 2009, Senior Camp Counselor Matthew Bovee ("Bovee") sexually assaulted Johnny Doe (an 11-year-old boy) on multiple occasions by penetrating Johnny Doe's anus and groping Johnny Doe's genitalia. On May 10, 2011, Bovee pleaded guilty to a felony offense for his criminal actions.

In May 2012, the Doe Family filed this lawsuit for various causes of action. The Camp's unlawful acts and omissions before, during, and after the sexual abuse are detailed more thoroughly in the Second Amended Petition. *See* Image Number 61527595 (July 10, 2014). As a brief factual summary, the Camp committed numerous tortious acts (independently and vicariously) (a) through their own acts of defamation, misrepresentation, and cover-up; (b) arising from their employment, supervision, and retention of Bovee; (c) through their investigation of and failure to report sexual abuse; and (d) through various other acts and omissions at issue in this civil action. *Id*. at ¶¶ 11–87.

In May 2015, the Camp filed a Motion to Designate Responsible Third Parties. Through this motion, the Camp contends that John Doe and Jane Doe—Johnny Doe's father and mother—should each be designated as responsible third parties because each of them caused or contributed to causing Johnny Doe's defamation damages. *See* Image Number 65468437 at 1–2 (May 18, 2015). The Doe Family now moves to strike the designation and objects to the Camp's motion, pursuant to §33.004 of the Texas Civil Practices & Remedies Code.

### III.
### LAW AND ANALYSIS

In Texas, a "responsible third party" is defined as "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." TEX. CIV. PRAC. & REM. CODE § 33.011(6). Where such a person exists, a defendant may move to designate that person as a responsible third party on or before the 60th day before trial. *Id*. at § 33.004(a). If the motion is granted, the fact-finder becomes entitled to apportion a percentage of fault to the responsible third party's wrongful conduct. *Id*. at § 33.003.

2

In response, any other party may object to the motion and/or may seek to strike the designation. *Id*. at § 33.004(g), (l). A trial court should deny a motion to designate responsible third party where the defendant fails to sufficiently allege facts concerning "the alleged responsibility of the person." Similarly, a trial court must strike a designation of a responsible third party "unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damages." *Id*. at § 33.004(l).

In this matter, the Camp's attempt to designate Jane Doe and John Doe as responsible third parties fails because (1) the Camp has not sufficiently alleged that the parents violated any applicable legal standard, and (2) there is no evidence to support the Camp's claims against the parents. In order to designate a person as a responsible third party, the defendant must allege and produce evidence in support of the allegation that the proposed responsible third party actually committed a wrongful act of some kind. The Camp simply has not done so here.

First, the Camp's motion does not allege that Jane Doe or John Doe violated any applicable legal standard. It appears as if the Camp is trying to allege that John Doe and Jane Doe committed tortious acts of defamation against Johnny Doe and that these acts caused or contributed to Johnny Doe's injuries. The Camp, however, simply has not alleged that Jane Doe or John Doe violated this legal standard.

 In order to prove a cause of action for defamation, a claimant must generally allege and prove the following substantive elements:

1. The defendant published a statement of fact;
2. The statement referred to the claimant;
3. The statement was defamatory;
4. The statement was false;
5. With regard to the truth of the statement, the defendant was acting with malice, was negligent, or liable without regard to fault; and

3

6.      The claimant suffered injury as a result of the publication.

*See, e.g.*, TEX. CIV. PRAC. & REM. CODE §73.001; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986); *Gertz v. Robert Welch, Inc.*, 418 U.S. 23, 342 (1974); *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Bentley v. Bunton*, 94 S.W.3d 561, 579, 586, 590 (Tex. 2002); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  The Camp has not made any factual allegations in support of the third, fourth, or fifth elements.

Specifically, the Camp has not alleged that any statements (oral or written) made by Jane Doe or John Doe about Johnny Doe were defamatory, were false, or were made with a culpable mindset.  Accordingly, the Camp has failed to allege that Jane Doe or John Doe violated any applicable legal standard.  The Camp's motion, therefore, should be denied.

Second, there is no evidence to support the Camp's claim that Jane Doe or John Doe committed any acts of defamation against Johnny Doe.  Put simply, the statements identified in the Camp's motion were not defamatory, were not false, and were not made with a culpable mindset.

In support of its motion, the Camp references the deposition testimony of John Doe, S.A. (a community witness), S.W. (Johnny Doe's middle school principal), and Megan Mooney, Ph.D. (Johnny Doe's treating psychologist).  Likewise, the Camp vaguely references an article featured in The Houston Press.  None of the referenced materials is sufficient evidence of a defamation claim or the violation of any other legal standard.

John Doe's testimony demonstrates that he talked to a family friend T.B. (whose own son had attended Camp La Junta with Johnny Doe) about the fact that Johnny Doe was the victim.  The statements made during these conversations were not defamatory, were not false, were not made

4

with any culpable mindset, were not publicly disclosed, and did not injure Johnny Doe. This evidence, therefore, does not support the Camp's requested designation.

S.A.'s testimony reflects that S.A. determined the true identity of Johnny Doe on his own and spontaneously shared his belief with T.B. In turn, T.B. informed John Doe about S.A.'s statements. John Doe, in response, contacted S.A. to discuss the matter—S.A.'s own son had attended Camp La Junta as well—and confirmed that Johnny Doe was the victim. Again, the statements made during this conversation were not defamatory, were not false, were not made with any culpable mindset, were not publicly disclosed, and did not injure Johnny Doe. This evidence, therefore, does not support the Camp's requested designation.

S.W.'s testimony reflects that, at or around the beginning of Johnny Doe's attendance at a new middle school, John Doe and Jane Doe shared what happened to Johnny Doe with S.W. The parents did so in order to provide support for their son at his new school. Again, the statements made during this conversation were not defamatory, were not false, were not made with any culpable mindset, were not publicly disclosed, and did not injure Johnny Doe. This evidence, therefore, does not support the Camp's requested designation.

Dr. Mooney's testimony reflects that, in October 2012, Johnny Doe expressed general frustration to Dr. Mooney because Jane Doe had shared information regarding his abuse with other people. Dr. Mooney's notes further reflect that this parental frustration largely resolved itself within a week, is commonplace for minor victims of sexual abuse, and is a natural causal consequence stemming from Johnny Doe's sexual abuse. *See* Deposition of Megan Mooney, Ph.D., 76:13–24; 80:10–81:10 (Sept. 8, 2014); Progress Note dated October 24, 2014 (Mooney00062, included within Exhibit 1 to Dr. Mooney's deposition).

5

On the other hand, Dr. Mooney's testimony does not support a claim for defamation because there is no evidence that these statements were defamatory, were false, or were made with any culpable mindset. In fact, this testimony does not even reflect when the statements were made, to whom the statements were made, or what the statements were.

Lastly, the article published by The Houston Press does not identify Johnny Doe or the Doe Family, is not defamatory, is not false, was not made with any culpable mindset, and did not injure Johnny Doe. Dr. Mooney's deposition testimony establishes these points. For example, Dr. Mooney testified as follows:

> Q. Well, you were asked questions; and it was sort of implied that the publication of this article had a negative impact on [Johnny Doe]. Did [Johnny Doe] ever tell you that?
> A. No.
> Q. Did [Johnny Doe's] parents ever tell you that?
> A. No.
> Q. From anything you saw or—or you observed in your treatment of [Johnny Doe], did you ever feel that that article in any way exacerbated [Johnny Doe's] injuries or symptoms?
> A. No. I don't think it was ever referenced in my therapy sessions.
> …
> Q. Okay. In that -- now, in that article, did it mention [Johnny Doe's] name at all?
> A. Not that I recall.
> Q. Did it mention his parents' names at all?
> A. I don't believe so.

Mooney Depo., 82:4–16, 83:4–8.

Ultimately, the Camp carries the burden of demonstrating that there is some evidence to support of its claim that Jane Doe and John Doe committed tortious acts of defamation that injured Johnny Doe. In this case, the evidence referenced in the Camp's motion does not support its burden, and the Doe Family asserts that there is no evidence in support of the Camp's position. Accordingly, the Court should strike the Camp's designation.

6

## IV.
### CONCLUSION

For the foregoing reasons, the Doe Family respectfully requests that the Court deny the

Camp's Motion to Designate Responsible Third Parties and/or strike any such designation.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP

/s/   *Bob Wynne*

Rusty Hardin
rhardin@rustyhardin.com
State Bar No. 08972800
Andy Drumheller
adrumheller@rustyhardin.com
State Bar No. 00793642
Robert P. Wynne
bwynne@rustyhardin.com
State Bar No. 24060861
1401 McKinney, Suite 2250
Houston, Texas 77010-4035
(713) 652-9000
(713) 652-9800 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served on all counsel of record on June 10, 2015, pursuant to Rule 21a.

/s/   *Bob Wynne*

Bob Wynne

7

**TAB E**

# TAB F

## CAUSE NO. 2012-31192

| | | |
|---|---|---|
| **JOHNNY DOE, PLAINTIFF** | § | **IN THE DISTRICT COURT OF** |
| **by and through his Parents, JOHN** | § | |
| **DOE and JANE DOE,** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **CAMP LA JUNTA 1928, L.P., et al.** | § | **333rd JUDICIAL DISTRICT** |

### POST-HEARING SUBMISSION OF EVIDENCE
### IN SUPPORT OF OBJECTION TO
### AMENDED MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM

Plaintiff, JOHNNY DOE, A MINOR, by and through his parents, JOHN DOE and JANE DOE, INDIVIDUALLY AND AS NEXT FRIENDS OF JOHNNY DOE, A MINOR (collectively, the "Doe Family") submits this Post-Hearing Submission of Evidence in Support of their Objection to Defendants Camp La Junta 1928, L.P., Camp La Junta, Inc., CLJ Management Systems, L.L.C., and Blake Smith's (collectively, the "Camp") Amended Motion for Appointment of Guardian Ad Litem. *See* Image Number 65339519 (May 7, 2015). The Doe Family identifies the substance of the evidence and the bases for the submission below.

In May 2015, the Camp filed an amended motion seeking the appointment of a guardian ad litem. Through that amended motion, the Camp contended (for a second time) that Johnny Doe's interests are sufficiently adverse to his parents' interests such that the Court is legally mandated to appoint a guardian ad litem.

The Court conducted an oral hearing on that motion on May 29, 2015. At the conclusion of the hearing, the Court denied the amended ad litem motion. A copy of the transcript is attached as Exhibit A.

The Camp has now filed a Petition for Writ of Mandamus with the First Circuit Court of Appeals regarding the Court's denial of the amended ad litem motion. The Doe Family now seeks to formally introduce evidence referenced during the oral hearing.

During the oral hearing, counsel for the Doe Family identified the existence of a text message sent by Johnny Doe to counsel on the evening before the hearing. *See* Oral Hearing Transcript at 25 (May 29, 2015). In that text message, Johnny Doe expressed his own personal viewpoints on the substance of the amended ad litem motion and the allegation that his interests are adverse to his parents' interest. *Id*. The Doe Family now introduces the substance of Johnny Doe's text message to the Court *in camera* through the Affidavit of Robert P. Wynne, attached as Exhibit B.

The affidavit is being submitted *in camera* to the Court because it reflects confidential information protected by the Court's Agreed Protective Order and by the attorney-client privilege. Given the significance of the Camp's contention that the interests of Johnny Doe's parents are adverse to Johnny Doe's interests, the Doe Family contends that it is necessary for the Court to accept this evidence *in camera* (1) to preserve the privileged nature of the communication and the anonymity of Johnny Doe, while (2) simultaneously ensuring that Johnny Doe's interests are sufficiently protected.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP

/s/  *Bob Wynne*

Rusty Hardin
rhardin@rustyhardin.com
State Bar No. 08972800
Andy Drumheller
adrumheller@rustyhardin.com
State Bar No. 00793642
Robert P. Wynne
bwynne@rustyhardin.com
State Bar No. 24060861
1401 McKinney, Suite 2250
Houston, Texas 77010-4035
(713) 652-9000
(713) 652-9800 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing instrument was served on all counsel of record on June 30, 2015, pursuant to Rule 21a.

/s/  *Bob Wynne*

Bob Wynne

3

# EXHIBIT A

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 2012-31192

| | | |
|---|---|---|
| JOHNNY DOE, A MINOR, BY AND | * | IN THE DISTRICT COURT OF |
| THROUGH HIS PARENTS, JOHN | * | |
| DOE AND JANE DOE | * | |
| VS. | * | HARRIS COUNTY, T E X A S |
| | * | |
| | * | |
| | * | |
| CAMP LA JUNTA 1928, LP, | * | |
| ET AL | * | 333RD  JUDICIAL DISTRICT |

-----------------------------------------------------------

MOTION FOR AD LITEM APPOINTMENT

-----------------------------------------------------------

On the 29th day of May, 2015, the Hearing on MOTION FOR AD LITEM APPOINTMENT came on to be heard in the above-entitled and -numbered cause; and the following proceedings were had before the Honorable Joseph "Tad" Halbach, Judge Presiding, held in Houston, Harris County, Texas:

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-assisted transcription.

A P P E A R A N C E S:

MR. BOB WYNNE
Bar No. 24060861
Rusty Hardin & Associates, LLP
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas  77010
713.652.9000
Bwynne@rustyhardin.com
COUNSEL FOR PLAINTIFF

MR. KENT ADAMS
Bar No. 00869200
Lewis Brisbois Bisgaard & Smith, LLP
24 E. Greenway Plaza, Suite 1400
Houston, Texas  77046
713.659.6767
Kent.adams@lewisbrisbois.com
COUNSEL FOR DEFENDANTS

THE COURT: We're on the record in Cause No. 2012-31192, *Johnny Doe, a minor by and through his parents versus Camp La Junta*. We are here today on the Defendants' motion to appoint a guardian ad litem for the minor in this case.

Let me hear the announcements, please.

MR. ADAMS: Your Honor, Kent Adams for the Defendants. Ready to proceed.

MR. WYNNE: Bob Wynne on behalf of the Plaintiffs, Your Honor.

THE COURT: Okay. You may proceed, Mr. Adams.

MR. ADAMS: Thank you, Your Honor.

Judge, we're here today on our amended motion for appointment of guardian ad litem for the minor, Johnny Doe, pursuant to Rule 173.2(a)1 which provides that the Court shall grant the motion if it appears to the Court the next friend and Plaintiff have an adverse interest.

In this case we have a 17-year-old minor, Johnny Doe, and his guardians are his parents; they are his next friends. By the way --

THE COURT: Let's make sure we understand. There is no guardianship in place. They are next friends, right?

MR. ADAMS: Yeah, correct. Yes, sir. And I didn't mean guardians in the legal sense but thanks for that clarification. And we are not asking for any change of who the next friends are. This is merely the appointment of an ad litem.

The evidence that I'll lay out for you very briefly in a moment is that Johnny Doe wants this case over and his mother doesn't; that his interest is to get it behind him. His mother's interest, as she's testified to, is to make sure justice was served and make things right. She wants the case tried.

Dr. -- one of the Plaintiff's treating doctors is Dr. Mooney. The records that we provided to the Court last night in-camera, on January 10th of 2013, Dr. Mooney said with respect to the minor: "He reported feeling frustrated by lack of control he has in deciding whether to accept any proposed settlements in civil case. Explore his thoughts and feelings about this issue. Worked with Johnny to think about other's perspectives and generate possible solutions. Johnny was able to develop a plan to talk with his father about his thoughts and feelings. Johnny feels very strongly about needing a sense of control over the situation."

Then from the testimony of his mother, Jane Doe, which was taken back on December 17th of 2012, Your

Honor, Mrs. Doe testified on Page 187 of her deposition and the question is:

"My question specifically is whether or not you've had any discussions with any of Johnny's therapists about any potential impact that this litigation may have on him.

"Answer: That's kind of what we discussed was, you know, that it may be healing for him to be able to face Defendant face to face.

"Question: I didn't realize that was a specific conversation you had with Barghi, Diane Barghi?

"Answer: Yes. I'm sorry. I guess I wasn't real clear on that.

"Question: So if I understand your testimony correctly from that discussion, you concluded or believe that the civil litigation would actually be a positive?

Answer from Mrs. Doe: "Yes. You know that's what I believe.

"Question: Have any of Johnny's therapists or other medical providers offered any contrary view to that?

"Answer: I don't know that I really asked them, you know. You know, part of it was we told them that Johnny doesn't realize you get money from this, so

he's doing this because he feels he's helping children because he knows that if he doesn't do something because of what happened to him at Camp La Junta, he feels that other children will get molested at La Junta because of the way this was handled."

Skipping over to Page 189:

"Question: My question was, I think, whether or not any of Johnny's therapists or medical providers have offered a contrary view that the civil litigation might not be beneficial to Johnny's progress?

"Answer: No."

The third of nine brief offers I have, Your Honor.

The deposition of Dr. Barghi --

THE COURT: Let me stop you for just a minute. Rule 173 as amended has drastically changed the roles of guardian ad litems. In the old days, particularly under a case called *Bird versus Woodruff*, the ad litem literally supplanted the next friend and was treated almost as if they were a guardian and by "guardian" I mean under the probate court, although another amendment to that is they had no power to ultimately settle things without court approval. Just like under Rule 44, a guardian ad litem has no power. But just to make sure we're clear, Rule 173.1 et. seq

is an entirely different animal than it was before.  Now the Court has some powers to expand the roles but Footnote 4 says "only in extraordinary circumstances does the rule contemplate that a guardian ad litem will have a broader role."

Even then the role is limited to determining whether a party's next friend has an interest adverse to the party that should be considered by the Court under Rule 44.  "In no event may a guardian ad litem supervise or supplant the next friend or undertake to represent the party by serving."  That's very clear.

So why did I do that?  To lecture?  No.  To say, counsel, exactly what is it that you're hoping to -- what role are you asking this potential guardian ad litem to have in this case?

MR. ADAMS:  Act as the rule provides and that is as an advisor to the Court based on the guardian ad litem's interaction with the minor Plaintiff.

THE COURT:  And advise the Court what?  Rule 173 contemplates there is a settlement that the parties propose and that there is an adverse interest with regard to the division of the settlement fees.

As I understand it here, we don't have that.  Unless what the Defendant is trying to do is

trying to get an ad litem to convince the Court that there's a reasonable settlement, which I've seen before, that the minor should take; but even then it begs the issue, what power do I have?

And then finally I'll add that Plaintiff's counsel and Mr. Hardin, Plaintiff's two lawyers who are leading the charge here, represent the minor. They have duties to the minor. And if they believe there is a conflict of the type you're describing, it would seem to be their duty to advise parties that maybe new counsel is required -- I'm not suggesting there is.

So all I'm doing is coming back to this, Mr. Adams, to say: What exactly are you hunting for here, because I'm not sure I have the power to do it --

MR. ADAMS: Yes, sir.

THE COURT: -- even assuming it were appropriate?

MR. ADAMS: Yes, sir. I believe it's appropriate and that you have the power to do it and I would cite the Court to 2006 Texas Supreme Court case *Land Rover versus Hinojosa*. In that case it was a personal injury case. When the ad litem issue came up the Plaintiffs were negotiating a settlement. We've had two mediations. There was not a proposed settlement on the table. The parties recognize a conflict of interest

between the parents and the minor child might exist and it's important to note again that the case had not settled, or there was not a final settlement proposal on the table.

THE COURT: Agreed. In fact, Rule 173 gives me the authority to appoint an ad litem to attend a mediation, for example.

MR. ADAMS: Yes, sir. That's exactly -- and that's basically what we're looking for.

THE COURT: Okay. But if that happens, where do we go from there? Let's assume the Court did that and let's assume that a hypothetical ad litem says, "Judge, I think it's in the best interest of the minor for the offer that's been extended to be accepted." Where do I go from there? I don't have any power to force that. I have none.

MR. ADAMS: Well, if the ad litem were to do that, then clearly there would be a conflict in the positions taken by the parents and the minor; and I think the Court would -- the cases would anticipate that the minor's interest would have to be protected by the Court at that point.

THE COURT: No, no, no. Show me that case. I'm not aware of any such case.

MR. ADAMS: The Texas Supreme Court says

that "when" --

THE COURT: Same case?

MR. ADAMS: Yes, sir.

THE COURT: Go ahead.

MR. ADAMS: "When a minor is represented by next friend who appears to the Court to have interest adverse to the minor, the Court shall appoint a guardian ad litem for that person."

THE COURT: And that usually means a financial interest apart from that. In other words, there's a conflict. Mom has -- this is a hypothetical mom -- has her own personal injury claims in a car wreck case, let's say, for personal injuries and so does the minor and when it comes to deciding how much to settle for we presume and the law presumes we need someone to advise the Court, is this division in the interest of the minor?

But I just want to repeat again, the *Bird v. Woodruff* days are gone. The ad litem has no power to act on behalf of the minor. And even under the exceptions to this rule, Footnote 4 says -- or Comment 4, sorry, says "limited role."

MR. ADAMS: I agree. I agree. In *KC Greenhouse Patio Apartments*, which is a First Circuit Court of Appeals opinion from 2012, Judge Brown wrote

it, 445 --

THE COURT: We've had some discussions about that case. Go ahead.

MR. ADAMS: Yes, sir. He noted that Rule 173 was not the correct vehicle for changing next friend and we've talked about that and that's not what we're here today.

"The guardian ad litem should be appointed when it appears to the trial court that the next friend has an interest adverse to the minor. The conflict need not actually exist. The potential for conflict is sufficient to justify the appointment of a guardian ad litem."

Judge Brown went on to say that the "Texas Supreme Court does not define what constitutes an adverse interest under 173," so I agree with this Court that there are some unchartered waters. But in a number of recurring situations he says "the courts most commonly apply the rule to adverse interests relating to the division of settlement proceeds," as this Court has noted.

THE COURT: Notice it says "division of settlement proceeds." Not "acceptance" but "division."

MR. ADAMS: Yes, sir.

THE COURT: By the way, the Supreme Court

has spoken. To the extent it has, that's -- these are the Supreme Court's rules --

MR. ADAMS: I --

THE COURT: -- assuming there is -- no, no, no. I wasn't trying to be cute with you. You're right. There hasn't been since the adoption of Rule 173 a new Supreme Court opinion dealing with that other than the case that says that a claim for reimbursement of the minor's medical expenses is not enough to create a conflict, if that's all it is.

But my only point is, to the extent the Court has spoken, it has spoken under the comments to 2004.

MR. ADAMS: Yes, sir. And what Justice Brown went on to say was that an adverse interest may also arise, as you mentioned, with respect to the medical expenses. That's been addressed by the Supreme Court. But the opinion talks about adverse interest.

Now the record, which I was in the middle of laying out, would like -- I have a few more offers to make.

THE COURT: Please, please, please.

MR. ADAMS: I should have prefaced this --

THE COURT: Please do.

MR. ADAMS: -- will show that, I believe --

and I'm here as an officer of the court today, not as --

THE COURT: I respect that and I accept that.

MR. ADAMS: That's why I'm here. And I believe the Court has an opportunity here before the toothpaste is out of the tube, before the identity of the parties goes public, we have a public trial with all the attended news media, to have a guardian ad litem look at this and advise the Court on what's the best interest of the young man.

THE COURT: Now what do I do with that?

MR. ADAMS: Your Honor, that's --

THE COURT: Tell me where my power is at that point. Let's assume that I hear a settlement offer that's out there, okay, on behalf of the minor. By the way, just -- I need to be reminded. I was just looking at this. Do the parents assert their own individual claims in this case?

MR. ADAMS: They abandoned those other than for the medical expenses.

MR. WYNNE: We never asserted them.

THE COURT: Whether you did or not. So this is an even more unique situation. There is no conflict. The law presumes no conflict of the usual type in any event, right?

MR. ADAMS: Yes, sir. That's correct. But just to correct the record, they did have their own claims. We asked for IME's. Those claims were dropped. But anyway, that's -- the reason I mention that was the last hearing I was accused of gamesmanship, which I thought was unfair and --

THE COURT: And, by the way, as I said, it may have been. I didn't -- to the extent that I was concerned about that, the more I went into that, I understood what you were getting at. It's not -- it was never my intent to accuse you of anything.

MR. ADAMS: And I didn't suggest the Court did and I appreciate that, and I have a tremendous amount of respect for Plaintiff's counsel.

Just continue with my very brief offers, Your Honor. And so the point that I'm trying to make with these offers as by way of a road map is that I believe, as an outsider looking in, that the parents love their child very, very much and they are very protective of him and that's as it should be. I also believe that the 17-year-old does not want a public trial of this case, that he wants to put it behind him. I also believe that the mother has turned this into a cause, which is understandable as well, and so I think that's where the conflict comes in. Her interest is in

championing the rights -- or the issue of child abuse; his interest is going into his senior year in high school and moving on with his life.

Continuing with my very brief offers, Your Honor. From the deposition of Dr. Barghi, another of the Plaintiff's treating healthcare providers, Page 111:

"Question: Then Johnny's mother reports Johnny told her in Europe that I think he meant to say he moved on?

"Answer: Yes.

"And that she needed to also?

"Answer: Yes.

"What did that mean?"

Answer by Dr. Barghi: "It just meant that he -- he was trying to move past everything and that he was working on moving past it. But it was hard because of mom's talking about it. It's hard for him to move past it.

"Question: To move past it meaning the incident which happened at camp?

"Answer: Yes.

"Okay. And then you told Mrs. Doe that she should listen to her children because Johnny cannot move on if she does not?"

Answer from Dr. Barghi: "Yes."

Then on Page 113, again Dr. Barghi is testifying from the notes, the therapist notes, and I quote from Line 14: "Therapist talked to Johnny about school and about the court case coming up. Johnny told therapist that his mom was talking about it constantly and he doesn't want to think about it anymore. He talked to the therapist about wanting to move on and he isn't going -- he wasn't going to choose to let it ruin his life."

I asked: "Did I read that pretty accurately?"

Dr. Barghi answered: "Yes."

Then from the deposition of Dr. Mooney, who is over at DePelchin, she's also one of the minor Plaintiff's treaters. Question on Page 18 Line 12:

"Did you say under progress note or communication that you met with Johnny individually, he expressed considerable frustration with his mother about how much of his personal business including his abuse history she has shared with other people without his permission? Did I read that correctly?

"Answer: Yes, sir."

Skipping over in Dr. Mooney's deposition to Page 20 Line 22:

"Question: Okay. You said you met with

Johnny and mother jointly, therapist, that would be you."

We're referring to the therapist notes, Your Honor.

"Answer: Correct.

"Okay. Help Johnny to express his concerns to his mother about how and how much information she either intentionally or accidentally shared with other people. Mother responded appropriately by validating Michael's concerns and saying she would try to be more mindful of this in the future. She and Johnny will develop a password so that he can let her know if she's talked -- is talking about things that upset him in the future. So that was the follow up to the prior session where you said we're going to try to get everybody together and work this through?

"Answer: Correct."

Further from the deposition of Dr. Mooney on Page 32 Line 4:

"Question: Okay. In your assessment you said Johnny feels very strongly about needing a sense of control over the situation. He has" -- I'm sorry, I'm sorry, I was just going to say "correct."

From Page 31 of Dr. Mooney deposition:

"Johnny reported feeling frustrated by a

lack of control he has in deciding whether to accept any proposed settlements in civil case."

THE COURT: May I interrupt for just a second?

MR. ADAMS: Yes.

THE COURT: How old is he?

MR. ADAMS: He's 17.

THE COURT: When will his birthday be?

MR. ADAMS: In April next year he'll turn 18.

THE COURT: Okay.

MR. ADAMS: Page 31 Line 13:

"Question: Now this kind of gets back to what we were talking about a little earlier about Johnny's personal business and so forth. That does not -- isn't Johnny here telling you that he doesn't feel like he has control over the settlement discussions in his own lawsuit?

"Yes. I think that's fair."

By the way, I would remind the Court, which the Court knows, Johnny is old enough to be charged as an adult in criminal court.

THE COURT: No, I know. I was just asking.

MR. ADAMS: Yes, sir.

Two more offers, very brief, Your Honor.

From the September 12, '11 records of Dr. Forrester, the third of the Plaintiff's treaters that I've brought evidence to you today on that.

In that progress note Dr. Forrester says: "When mom left Johnny" -- meaning from the joint session in her therapy session -- "Johnny just wanted to talk. Therapist talked to him about school and about the court case coming up. He told therapist that his mom is talking about it constantly and he doesn't want to think about it anymore. He told therapist about wanting to move on and he wasn't going to choose to let it ruin his life."

And then from Dr. Forrester's records of 8-15-11: "Mom reports Johnny told mom in Europe that she had moved on and she needs to also. Therapist told mom that she should listen to her children because he can't move on if she does not."

So, Your Honor, the point of all that testimony is to show that while there may not be adverse interest here about money, and I don't think there are, there clearly are adverse interests about the purpose and goals of this litigation. And I say this with all due respect because these are all good people involved in this case, Your Honor, but the Plaintiffs, in particular Mrs. Doe, I believe, has an agenda and it's

about a cause here that she's taken up, a cause against --

THE COURT: Let me ask you something. Let's assume that we wait until April and he turns 18 and he decides he's got a cause. Nothing wrong with having a cause per se, is there?

MR. ADAMS: There's not, but the testimony that you've heard, Your Honor, is that he doesn't. He wants to move on.

THE COURT: No, I heard that part. I just want to make sure, you keep saying "it's a cause." I mean, another way to look at it -- well, let me ask a question: Have you received a counter -- I don't want to discuss any numbers --

MR. ADAMS: I understand.

THE COURT: -- not in the least. I'm not here to decide that. Have the Plaintiffs ever made a settlement offer to you-all?

MR. ADAMS: We've had settlement discussions --

THE COURT: That's not what I asked. I want to say it again.

MR. ADAMS: Yes.

THE COURT: So it looks like there is a position at which the next friends are willing to

resolve this matter and not to pursue a cause, correct?

MR. ADAMS: Well, the only way I can answer that fully is to -- not talk about money, because there's a condition that's attached to the settlement. I won't describe that. But the condition would be considered a poison pill that is not related to money. And so in that condition --

THE COURT: Excuse me. No, that's appropriate for you to bring that up. Okay.

MR. ADAMS: So that's --

THE COURT: And are you saying -- I'm not trying to get into the details, but has that -- have we ever reached a situation where your client has made a counter that was -- that came closer in terms of dollars and said "but this is contingent on removing that condition?" In other words, I don't know where we go on that.

MR. ADAMS: Yes, sir.

THE COURT: I'm trying to be respectful of you, counsel, and your clients; but how do I know this isn't just about money. It just isn't about your side saying it should be reasonable for them to take our dollars in X figures and their response is X with three more zeros behind it, or whatever it is. I'm not trying to pick zeros.

And I'm not suggesting that in this case. I do not suggest that you've brought this motion in bad faith. Nothing. But I had a case tried last calendar year where it was all about the dollars. The Defendants thought it was unreasonable that they could turn it down, okay? I will not tell you what happened in the case but that's the risk that next friends take, isn't it?

MR. ADAMS: Judge, this isn't about the dollars.

THE COURT: Okay.

MR. ADAMS: And, Judge, I have two grown children. I've raised two children. One of them got married recently and the other one is going to get married. I look at this as a father, as an advocate, as a lawyer, all those things --

THE COURT: How do I know that -- if they have made an offer, a counter, dollars; in other words, they haven't said under no circumstances are we settling this matter, we're going to try it so the public hears it. That's what I was trying to get to. Now what you've said is, "Judge, they've attached the non-monetary provision that you believe is a poison pill" and I would assume what you're saying is it falls back into that category of pursuing a cause, is that

right?

MR. ADAMS: I would say that, yes, sir. But to answer your question, there's a real, real, real simple answer to your question and that is to appoint a guardian ad litem.

THE COURT: But what would that guardian --

MR. ADAMS: Yes, sir.

THE COURT: So where does that guardian ad litem take us?

MR. ADAMS: The guardian ad litem would report back to the Court, in my opinion ideally, whether or not he believes or she believes that the child's interests are being fully advanced or properly advanced by the parents; and if not, then I would think that that's information that the Court would at least share with Plaintiff's counsel so they could evaluate their position in that situation.

THE COURT: Whoa. Now, let's back up. Plaintiff's counsel already has duties to this minor. Plaintiff's counsel is aware, I assume, of the same evidence you just gave me. Plaintiff's counsel has a duty and they are well reputed. These are experienced Plaintiff's counsel. They understand where their duties lie and they understand the tricky boundaries that might be there. In any case, by the way, particularly in the

case you've described.  So why aren't they already being represented in that sense?

MR. ADAMS:  Well, then, why would the Court appoint an ad litem to look at a settlement?  I mean, you're just talking about where we are on a continual. If we came to you with settlement --

THE COURT:  No, no, no.  You don't understand what I'm telling you.  When you've got the settlement, the law presumes that issue and the Court -- and I'm here to be advised.  In this case we don't have a deal, okay?  It's not like there's a deal that people have reached and they want me to bless it and approve it, as Rule 44 requires.

What I'm saying is, if Plaintiff's counsel views the type of conflict you believe it has risen to, then it would seem to me that Plaintiff's counsel would have a duty, certain duties professionally to do something and so far they haven't.

MR. ADAMS:  Well, Your Honor, let me just say that there have been discussions over a long period of time between the two law firms about this very issue, and I'm bringing this motion in light of those discussions.

THE COURT:  Okay.  I got it.

Response?

MR. WYNNE: I'm going to do my best to stay calm, Judge. I think you saw the response. It was very mild.

There's a whole lot I could say. I don't really think I need to, but I will try and hit on some of your points. There's nothing for an ad litem to do even if one was merited or warranted in this case. There's no settlement on the table. We've mediated this case twice. They know what the demands are.

The poison pill that Mr. Adams spoke of, that came from Johnny. He's the one who wants that. He's the one who is controlling the language of that non-monetary component. So I don't even understand how that could possibly create an adverse interest. But if we took everything that they've said, that doesn't even get me close to an adverse interest between mom and son.

Those notes that were referenced, 2011, 2012, the last three years, know what they've done? They've worked through those issues. They're continuing to work through those issues. I've spoken to the doctors countless times. I've spoken to Johnny countless times. I got a text from him last night -- that I could show you in-camera; I could give you my phone -- that lays out his position precisely. There is no conflict.

The parents have done nothing to push him one way or the other.  There's a deposition testimony from his doctor specifically on that point.  I don't want to get too emotionally into it right now.  There's no basis for this, Judge, and I don't really want to --

THE COURT:  Let me summarize what you just said and this is what I'm taking from what you said.  Judge, assuming you were to glean what defense counsel says you should glean from the citations to the records that he gave you, circumstances have changed such that those issues don't exist anymore.

MR. WYNNE:  That's correct, Your Honor.

THE COURT:  One.  And two, as your duty of counsel to the minor, you have evaluated the situation and you feel -- you feel confident that this case is proceeding in a way that not only the next friends wants but the 17-year-old minor wants.

MR. WYNNE:  That's absolutely right, Judge.  My duties run to Johnny.  He knows that.  I know that.  Rusty knows that.  The parents know that.  I think that's been clear.  So, yes.

THE COURT:  The motion is denied.

MR. ADAMS:  Thank you, Your Honor.

Do you need an order, Judge?

THE COURT:  Yes.

(Discussion off the record)

THE COURT: We're back on the record. Mr. Adams referred to a number of records in this hearing and specifically talked about in-camera documents that he produced to the Court yesterday, which would be the 28th.

MR. ADAMS: Yes, sir.

THE COURT: I have those here at the bench, and I have handed them -- just handed them to Mr. Adams to go through them and this envelope that I'm holding is, in fact, those very documents, right?

MR. ADAMS: That's correct.

THE COURT: And I continue to hold them in-camera. And what I'm going to do right now is to sign my name on them and date this, 5-29-15. If there is a review of this matter prior to a final resolution of this case, final judgment in this case, I am holding those and will continue to in-camera and they will be properly delivered to any court that is reviewing this on a discretionary basis. I think that covers what you needed me to. If for some reason it doesn't, Mr. Adams, I have continuing jurisdiction over this matter and you can come right back and we can make sure. But that's the safest way to protect them in-camera is to continue to leave them in-camera.

MR. ADAMS: I agree and I appreciate that very much.

THE COURT: Is that okay?

MR. WYNNE: That's okay with the Plaintiffs.

THE COURT: I've got them. We're off the record.

MR. WYNNE: If there is an appeal --

THE COURT: Oh, back on the record.

MR. WYNNE: If there is an appeal taken to the next level, we also filed our evidence in-camera. I would ask that that would be delivered, as well.

THE COURT: Wait a minute. Is this what you are referring to?

MR. WYNNE: This is, Your Honor.

THE COURT: Okay. So likewise, I have yours and I am going to date this and sign it, the outside of the envelope, and I have them both if it should go to any court of appeals or other court that might review this. All right.

MR. ADAMS: Thank you, Your Honor.

THE COURT: We're off the record.

(Proceedings concluded)

THE STATE OF TEXAS
COUNTY OF HARRIS

I, Jodi Masera, Official Court Reporter in and for the 333rd District Court of Harris County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

I further certify that the total cost for the preparation of this Reporter's Record is $217.50 and was paid/will be paid by LEWIS BRISBOIS BISGAARD & SMITH, LLP.

WITNESS my hand this the 5th day of June, 2015.

/s/ Jodi Masera
Jodi Masera, Texas CSR No. 4273
Expiration Date: 12/31/16
Official Court Reporter
333rd District Court
Harris County, Texas
201 Caroline, 14th Floor
Houston, Texas 77002
(713)368-6485

# EXHIBIT B
# Filed *in camera*

**TAB G**

CAUSE NO. 2012 - 31192

| JOHNNY DOE, PLAINTIFF by and | § | IN THE DISTRICT COURT OF |
|---|---|---|
| Through his Parents, JOHN DOE | § | |
| and JANE DOE | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CAMP LAJUNTA 1928, LP., and | § | |
| BLAKE SMITH | § | |
| Defendants. | § | 333rd JUDICIAL DISTRICT |

## DEFENDANTS' OBJECTION AND MOTION TO STRIKE PLAINTIFFS' POST-HEARING SUBMISSION OF EVIDENCE

Defendants Camp LaJunta 1928 L.P., Blake Smith, Camp LaJunta, Inc., and CLJ Management Systems, L.L.C. (hereinafter collectively referred to as "Defendants"), file this Objection and Motion to Strike Plaintiffs' Post-Hearing Submission of Evidence, and would show the Court as follows:

As stated in Plaintiffs' Motion, Defendants asked this Court to appoint a guardian ad litem pursuant to Texas Rule of Civil Procedure 173 for minor Plaintiff Johnny Doe. All evidence in support of Defendants' motion was submitted *in camera* to this Court, and this Court has stated that it will continue to hold such evidence *in camera*.[1] Plaintiffs filed a response objecting to appointment of a guardian ad litem and likewise attached evidence submitted *in camera*. The Court conducted an evidentiary hearing on May 29, 2015, in which it admitted evidence, *in camera*, heard arguments of counsel and orally denied Defendants' Amended Motion for Appointment.[2] An Order signed that day stated that the Court denied the Amended Motion after "having analyzed the law,

---

[1] *See* Exhibit A attached to Plaintiffs' Post-Hearing Submission (Hearing Transcript pp. 27-28).

[2] *Id*. at p. 26

4833-1873-4629.1                1

reviewed the facts, and heard the argument of counsel." Currently, a Petition for Writ of Mandamus is pending in the First Court of Appeals, and it is necessary for this Court to preserve the integrity of the record for appellate review.

Plaintiffs now wish to *ex post facto* introduce evidence "*referenced* during the oral hearing"[3] **but not offered nor admitted, and neither seen nor considered** by the Court when it ruled. The transcript clearly reflects that this tardily proffered evidence was not offered in to evidence during the hearing, though Plaintiff's counsel claimed during the hearing, on the record, that it both existed and was on his person. The referenced "evidence" was not offered or viewed by the Court before it ruled.[4] Because the purported evidence was not proffered, Defendants had no opportunity to object to the putative evidence, nor to cross examine any witness with respect to such evidence. This post ruling evidence was not part of the proceedings and does not properly belong in the record of the Mandamus proceeding. Plaintiffs' attempt to alter the record before it is sent to the Court of Appeals is without merit.

Pursuant to the Texas Rules of Appellate Procedure, a record should contain "a properly authenticated transcript of any relevant testimony from any underlying proceeding, **including any exhibits offered in evidence,** or a statement that no testimony was adduced in connection with the matter complained."[5] Plaintiffs did not tender the late evidence as an exhibit; it is not part of the record and its omission is not a mere clerical error for the clerk's correction.

Moreover, given the procedural status of this matter, now pending before the First Court of Appeals, the introduction of any additional evidence in the record should be governed by the Rules

---

[3] Plaintiffs' Post-Hearing Submission of Evidence, p. 2 (emphasis added).

[4] Exhibit A attached to Plaintiffs' Post-Hearing Submission (Hearing Transcript pp. 25-26).

[5] Tex. R. App. P. 52.7(a)(2)(emphasis added).

of Appellate Procedure, which expressly provide a mechanism for supplementing the record. Pursuant to Rule 52.7(b) "[a]fter the record is filed[6], relator or any other party to the proceeding may file additional materials for inclusion in the record." However, the Plaintiffs must first meet their burden of proof to have the late evidence supplemented and considered by the Court of Appeals.[7] The attempted inclusion of this additional material at the trial court level, *after* the Court ruled and *while* the mandamus is *pending* before the First Court of Appeals, however, is not a viable option. Inclusion of this late evidence in the record would not accurately reflect the proceedings in this Court and would instead create a false record for the Court of Appeals. There is nothing in the record to indicate the purported evidence is self-authenticating. TRE 902. Moreover, should Plaintiffs request be granted, the evidence will be introduced into the record without affording Defendants an the opportunity review the purported evidence, to object to its introduction, to cross-examine the author of the purported evidence, or to cross examine defense counsel who submitted an affidavit purporting to authenticate the alleged evidence.

Finally, it is worth noting that Plaintiffs contend that this evidence is protected by the attorney-client privilege. In essence, Plaintiffs seek to provide evidence to benefit their arguments to the Court of Appeals (as this Court has already ruled), while still preserving their privilege of confidential communications. This is the epitome of the "sword and shield" doctrine. While Plaintiffs can certainly assert privileges clothing evidence it seeks to exclude, *Plaintiffs cannot*

---

[6] As the record has not been filed in the First Court of Appeals at this time, due to the *in camera* nature of the underlying exhibits, this not only improperly being filed in this Court, but is also premature. Once the record is requested by the Court of Appeals and submitted, Plaintiffs may then move the Court of Appeals to supplement with additional evidence.

[7] *See In re Cervantes,* 300 S.W.3d 865 (Tex. App. – Waco 2009, orig. proceeding)(applying the "unusual circumstances" test to evaluate a request to supplement the record in a mandamus proceeding).

*assert privileges to evidence it seeks to admit*, while simultaneously seeking affirmative relief based on the same information.[8] "When a party uses the privilege as a sword rather than a shield, he waives the privilege."[9] If Plaintiffs are allowed to alter the record with the late evidence, it will, by necessity waive such privilege and Defendants will be entitled to discovery on the underlying communications – including deposing the purported author of the evidence (Johnny Doe) and recipient (Plaintiff's attorney Bob Wynne) of the communication. The provenience of this late evidence has not been established, and additional discovery would be necessary for Defendants to properly prepare their response and defenses, should the Court be considering granting Plaintiffs' request.

Defendants request the Court deny Plaintiffs' Motion and strike this late evidence, and require Plaintiffs to follow the Texas Rules of Civil Procedure, Texas Rules of Evidence, and the Texas Rules of Appellate Procedure, if they chose to continue to seek introduction of post-hearing purported evidence.

WHEREFORE, PREMISES CONSIDERED, Defendants request that for the reasons stated herein, the Court strike or deny submission of the evidence attached as Exhibit B to Plaintiffs' Post-Hearing Submission of Evidence in Support of Objection to Amended Motion for Appointment of Guardian ad Litem.

---

[8] *See Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 590 (Tex. App.—Dallas 1994, orig. proceeding)(emphasis added)("Waiver based on offensive use of a privilege applies to confidential attorney-client communications.").

[9] *Id.*

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

/s/ *Kent M. Adams*

**KENT M. ADAMS**
State Bar Number 00869200
Kent.adams@lewisbrisbois.com
**SARAH M. DAVIS**
State Bar Number 24031998
Sarah.davis@lewisbrisbois.com
**KRISTIE E. JOHNSON**
State Bar Number 24038382
Kristie.johnson@lewisbrisbois.com
24 East Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile
**ATTORNEYS FOR DEFENDANTS
CAMP LAJUNTA 1928, LP, BLAKE SMITH,
CLJ MANAGEMENT SYSTEMS, LLC AND
CAMP LAJUNTA, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Objection And Motion To Strike Plaintiffs' Post-Hearing Submission Of Evidence has been served on the following by electronic service on this 1st day of July, 2015.

Rusty Hardin & Associates, LLP
Rusty Hardin
Andy Drumheller
Robert P. Wynne
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010


/s/ *Kent M. Adams*

KENT M. ADAMS

**TAB H**